HONORABLE JAMES L. ROBART

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CORUS REALTY HOLDINGS, INC.,

Plaintiff,

v.

ZILLOW GROUP, INC.; ZILLOW, INC.; and TRULIA, LLC,

Defendants.

Case No. 2:18−cv−00847−JLR

**CORUS REALTY HOLDINGS, INC.'S DAUBERT MOTION CHALLENGING EXPERT TESTIMONY**

NOTE ON MOTION CALENDAR: December 6, 2019

**[REDACTED]**

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ..................................................................................................1

II.   RELEVANT BACKGROUND ............................................................................1

    A.   Discovery of Defendants' "Irrelevant" Patent License Agreements .........1

    B.   Mr. Voth Relies on Defendants' "Irrelevant" Patent License Agreements .............2

III.   LEGAL STANDARDS .........................................................................................4

    A.   Daubert and Federal Rule of Evidence 702 ..............................................4

    B.   Federal Circuit Law Regarding "Comparable" License Agreements ......5

IV.   THE COURT SHOULD EXCLUDE MR. VOTH'S TESTIMONY AND OPINIONS REGARDING DEFENDANTS' PAST PATENT LICENSE AGREEMENTS .....................................................................................................8

    A.   Mr. Voth Fails to Account for Technological Differences ......................8

    B.   Mr. Voth Fails to Account for Economical Differences ........................10

    C.   Defendants' Irrelevant, Non-Comparable Licenses, and Mr. Voth's Testimony and Opinions Regarding the Same, Have No Place in this Case .........11

V.   CONCLUSION ...................................................................................................12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Avocent Redmond Corp. v. Rose Elecs.*,
No. C06-1711-RSL, 2013 WL 8844098 (W.D. Wash. Mar. 11, 2013).......................... 4, 5, 10

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993).................................................................................................. 4, 7, 8, 12

*Finjan, Inc. v. Secure Computing Corp.*,
626 F.3d 1197 (Fed. Cir. 2010) ............................................................................................ 5

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*,
318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) ..................................................................*passim*

*I/P Engine, Inc. v. AOL Inc.*,
No. 2:11-CV-512, 2012 WL 12068846 (E.D. Va. Oct. 12, 2012).............................. 7, 11, 12

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
694 F.3d 51 (Fed. Cir. 2012) ........................................................................................*passim*

*Lucent Techs., Inc. v. Gateway, Inc.*,
580 F.3d 1301 (Fed. Cir. 2009) .................................................................................... 5, 6, 9

*Microsoft Corp. v. Motorola, Inc.*,
No. C10-1823-JLR, 2013 WL 4008822 (W.D. Wash. Aug. 5, 2013) .................................. 4, 5

*Open Text S.A. v. Box, Inc.*,
No. 13-CV-04910-JD, 2015 WL 349197 (N.D. Cal. Jan. 23, 2015) ............................. 7, 11, 12

*ResQNet.com, Inc. v. Lansa, Inc.*,
594 F.3d 860 (Fed. Cir. 2010) ............................................................................................ 5, 6

*TV Interactive Data Corp. v. Sony Corp.*,
929 F. Supp. 2d 1006 (N.D. Cal. 2013)....................................................................... 7, 8, 12

*Wordtech Sys. v. Integrated Networks Solutions, Inc.*,
609 F.3d 1308 (Fed. Cir. 2010) ............................................................................................ 5

**Rules & Regulations**

Fed. R. Evid. 702 ................................................................................................................. 4, 5, 9

## I. INTRODUCTION

Pursuant to the Court's Order (Dkt. No. 50) and Local Civil Rule 7, Plaintiff Corus Realty Holdings, Inc. ("Corus") respectfully requests that the Court exclude any testimony or opinions proffered by Defendants' damages expert Drew E. Voth regarding Defendants' past patent license agreements. Mr. Voth relies on Defendants' past agreements in his conclusions and opinions regarding the hypothetical negotiation regarding the patent-in-suit, U.S. Patent No. 6,636,803 ("the '803 Patent"). Defendants, however, have failed to present any evidence or testimony, including from Mr. Voth, regarding the technical and economical comparability of Defendants' patent license agreements to the hypothetical negotiation at issue here. Given the absence of this necessary foundation, controlling law prohibits Mr. Voth from relying on Defendants' past agreements in support of his opinions. Accordingly, Mr. Voth's testimony and opinions regarding Defendants' self-described "irrelevant" patent license agreements—as well as the agreements themselves—should be excluded.[1]

## II. RELEVANT BACKGROUND

In the present action, Corus alleges that the following mobile applications provided by Defendants infringe one or more claims of the '803 Patent: the Zillow Real Estate mobile application, the Zillow Rentals mobile application, the Trulia Real Estate mobile application, the Trulia Rentals mobile application, and the HotPads mobile application (collectively, "the Accused Mobile Applications"). *See* Dkt. No. 35 at 2.

### A.   Discovery of Defendants' "Irrelevant" Patent License Agreements

At the outset of the case, Corus sought discovery from Defendants regarding any patent license agreements of Defendants that may be relevant to Corus's claim for damages in this case with respect to the Accused Mobile Applications. Exs. 1–3 (Interrogatory No. 5). In response, both Zillow and Trulia objected to the request as "irrelevant," and responded that they had not entered into any patent license agreements regarding any Accused Mobile Application. Exs. 1–2

---

[1] This Motion is supported by the declaration of Joshua H. Lee filed herewith. Therein, Mr. Lee sets forth relevant exhibits.

1  (Interrogatory No. 5).² Each went on to state that "[a]lthough it believes other licenses are
2  irrelevant, it will produce other patent license agreements." *Id.*

3  Over the following months, the Defendants subsequently produced copies of the various
4  "irrelevant" patent license agreements entered into by one or more of the Defendants. Thereafter,
5  on August 27, 2019, Defendants amended their responses to Corus's Interrogatory No. 5 as
6  follows (in pertinent part): "Defendants have produced the patent license agreements of which
7  they are aware. Defendants do not believe that they have entered into patent license agreements
8  that are specific to the accused apps, although the patent license agreements may cover
9  functionalities or features that are accessible within the apps." Ex. 4 (Interrogatory No. 5).
10 Defendants provided further amended responses to Corus's First Set of Interrogatories on
11 October 11, 2019, but did not further amend their response to Corus's Interrogatory No. 5
12 therein. *See* Ex. 5 (Interrogatory No. 5).

13 **B.  Mr. Voth Relies on Defendants' "Irrelevant" Patent License Agreements**

14 On September 27, 2019, Defendants submitted the Expert Report of Drew E. Voth
15 regarding his opinions on economic damages in this case. *See* Ex. 6. Therein, Mr. Voth provides
16 his opinions regarding the parties' hypothetical negotiation regarding the licensing of Corus's
17 '803 Patent under the *Georgia-Pacific* framework. Ex. 6, at ¶¶ 116–148. With respect to
18 *Georgia-Pacific* factor 2—"The royalties paid by the licensee for the use of other patents
19 comparable to the patents in suit"—Mr. Voth renders opinions regarding ▮ patent license
20 agreements entered into by Defendants. Ex. 6, at ¶¶ 118–123.

21 Mr. Voth first generally notes ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
22
23 ▮▮▮▮▮▮▮▮▮▮▮ Ex. 6, at ¶ 119. In view of that open-ended representation, Mr. Voth concludes,
24 in similar fashion, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
25 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 6, at ¶ 119 (emphasis added). Mr. Voth, however, never provides
26 any specific analysis or opinions regarding ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

28 ² Zillow Group likewise responded that it "does not believe that it has entered into any licensing negotiations relating to the Zillow or Trulia apps." Ex. 3 (Interrogatory No. 5).

1  ███████████████████████. *See* Ex. 6, at ¶¶ 118–123.

2    At most, Mr. Voth opines in conclusory fashion that ████████████████████
3  ████████████████████████████████████████████████████████████████████████████
4  ██████████████████████████████ Ex. 6, at ¶ 120. Notably, Mr. Voth does not
5  cite any evidence or testimony in support of that opinion in his report. Mr. Voth alleged at his
6  deposition, however, that support for his opinion included ████████████████████
7  ███████████████████████████████████████████████ Ex. 7, at 81:1–11.
8  Ms. Otter, however, does not have sufficient technical education and expertise to opine on the
9  specific subject matter licensed in Defendants' past agreements. *See* Ex. 8 (noting Ms. Otter's
10 B.A. in English Literature and French). And Mr. Voth conceded ████████████████
11 ████████████████████████████████████████████ Ex. 7, at 76:12–25. Mr. Voth also
12 conceded ██████████████████████████████████████████████████████████████████
13 ████████████████████████████████████████████████████████████████████████████
14 █████. In response to questions regarding the '803 Patent during his deposition, Mr. Voth
15 ███████████████████████████████████████████ *See, e.g.*, Ex. 7, at 48:23–49:8.

16    Despite ████████████████████████████████████████████████████████
17 ████████████████████████████████████████████████████████████████████, Mr.
18 Voth purports to have ████████████████████████ in Defendants' patent license
19 agreements, including ████████████████████████ in Schedule 23.0 AM to his report. Ex.
20 6, at ¶ 120. Not surprisingly, however, Schedule 23.0 AM does nothing of the sort. Rather, the
21 schedule simply ████████████████████████████████████████████████████████
22 ██████████████████████████████ Ex. 6, at Schedule 23.0 AM. From there, Mr. Voth
23 purports to ████████████████████████████████████████████████████████████
24 ████████████████████████████████████████████████ Ex. 6, at Schedule 23.0
25 AM. The schedule does not provide any detailed summary or analysis of each of the individually
26 licensed patents in the agreements (nor any detailed explanation regarding how each patented
27 functionality licensed in those agreements is accessible within the Accused Mobile
28 Applications)—let alone a meaningful comparison with the '803 Patent.

Notwithstanding his cursory purported technical analysis, Mr. Voth himself calls into question the overall comparability of Defendants' ▮ patent license agreements given ▮ ▮ *See* Ex. 6, at ¶¶ 120–121. Mr. Voth specifically notes that ▮ ▮ ▮ Ex. 6, at ¶ 120. Mr. Voth further states that, based on his review of the agreements, he is ▮ ▮ Ex. 6, at ¶ 121. As such, Mr. Voth readily concedes that he cannot ▮ ▮ Ex. 6, at ¶ 121.

Despite this fact, Mr. Voth nonetheless opines that ▮ ▮ ▮ ▮ Ex. 6, at ¶ 122. Notably, however, Mr. Voth could not state for certain whether ▮ ▮. *See* Ex. 7, at 78:4–80:23. Nonetheless, Mr. Voth concluded that ▮ ▮ Ex. 6, at ¶ 123; *see also* Ex. 6, at ¶ 42.

## III.   LEGAL STANDARDS

### A.   *Daubert* and Federal Rule of Evidence 702

"Expert testimony is admissible pursuant to Rule 702 if it is both relevant and reliable." *Microsoft Corp. v. Motorola, Inc.*, No. C10-1823-JLR, 2013 WL 4008822, at *3 (W.D. Wash. Aug. 5, 2013) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993)). "In *Daubert* [], the Supreme Court charged trial judges with the responsibility of acting as gatekeepers to prevent unreliable expert testimony from reaching the jury." *Avocent Redmond Corp. v. Rose Elecs.*, No. C06-1711-RSL, 2013 WL 8844098, at *2 (W.D. Wash. Mar. 11, 2013); *Microsoft*, 2013 WL 4008822, at *3. "The gatekeeping function applies to all expert testimony, not just testimony based on science." *Avocent*, 2013 WL 8844098, at *2.

"An expert witness may provide opinion testimony if: (1) the testimony is based upon

sufficient facts or data; (2) the testimony is the product of reliable principles and methods; and (3) the expert has reliably applied the principles and methods to the facts of the case." *Microsoft*, 2013 WL 4008822, at *3 (citing Fed. R. Evid. 702). "In general, the expert's opinion must be based on principles, techniques, or theories that are generally accepted in his or her profession and must reflect something more than subjective belief and/or unsupported speculation." *Avocent*, 2013 WL 8844098, at *2.

### B. Federal Circuit Law Regarding "Comparable" License Agreements

In patent cases, while there is no set formula for determining the amount of a reasonable royalty to compensate a patent owner for a defendant's infringement, the Federal Circuit has adopted the *Georgia-Pacific* factors as an appropriate framework for the question. *See, e.g.*, *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 76 (Fed. Cir. 2012); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009); *see Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).

"The second *Georgia-Pacific* factor is '[t]he rates paid by the licensee for the use of other patents comparable to the patent in suit.'" *Lucent*, 580 F.3d at 1325 (quoting *Georgia-Pacific*, 318 F. Supp. at 1120). This factor examines whether a defendants' past licenses "are sufficiently comparable to the hypothetical license at issue in suit." *Id.* "Subsumed within this factor is the question of whether the licensor and licensee would have agreed to a lump-sum payment or instead to a running royalty based on ongoing sales or usage." *Id.* at 1326.

As set forth above, *Georgia-Pacific* factor 2 expressly requires the "use of other patents *comparable* to the patent in suit." *Georgia-Pacific*, 318 F. Supp. at 1120 (emphasis added). The Federal Circuit has thus repeatedly made clear that "use of past patent licenses" under this factor "must account for differences in the technologies and economic circumstances of the contracting parties." *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1211 (Fed. Cir. 2010); *Wordtech Sys. v. Integrated Networks Solutions, Inc.*, 609 F.3d 1308, 1319–20 (Fed. Cir. 2010) ("[C]omparisons of past licenses to the infringement must account for 'the technological and economic differences' between them."); *see also ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 870–73 (Fed. Cir. 2010) (reversing the trial court's assessment of damages because it "made no

effort to link certain licenses to the infringed patent"). Moreover, the Federal Circuit has clarified that "alleging a loose or vague comparability between different technologies or licenses does not suffice." *LaserDynamics*, 694 F.3d at 79.

In instances where a damages expert does not account for such technological and economic differences so as to assess comparability of the license, the Federal Circuit has explained that the past license agreement and any expert's opinions regarding the same are entitled to no probative value. For example, in *Lucent*, the Federal Circuit vacated the district court's damages award because the award was based upon license agreements that were "radically different from the hypothetical agreement under consideration for the [patent-in-suit]," or otherwise based on license agreements for which the court was "simply unable to ascertain from the evidence presented the subject matter of the agreements." 580 F.3d at 1327–28. With respect to the latter, the court noted "it is impossible for us, based on the record, to determine whether the agreements are at all comparable to the hypothetical agreement of the present suit." *Id.* at 1328. In particular, the expert "supplied no explanation to the jury about the subject matter or patents covered by those agreements." *Id.* As such, the court concluded that it "cannot understand how the jury could have adequately evaluated the probative value of those agreements." *Id.* Moreover, based on the lack of evidence regarding comparability, the court noted it was "doubtful that the technology of those license agreements is in any way similar to the technology being litigated here." *Id.* at 1329.

Additionally, with respect to economic comparability, the Federal Circuit has a "longstanding disapproval of relying on settlement agreements to establish reasonable royalty damages" under the *Georgia-Pacific* factors. *LaserDynamics*, 694 F.3d at 77. The Federal Circuit has specifically recognized: "The notion that license fees that are tainted by the coercive environment of patent litigation are unsuitable to prove a reasonable royalty is a logical extension of *Georgia-Pacific*, the premise of which assumes a voluntary agreement will be reached between a willing licensor and a willing licensee, with validity and infringement of the patent not being disputed." *Id.*; *see ResQNet.com*, 594 F.3d at 872 ("[T]his court has acknowledged that the hypothetical reasonable royalty calculation occurs before litigation and that litigation itself can

PLAINTIFF'S DAUBERT MOTION
Case No. 2:18-cv-00847-JLR

- 6 -

KILPATRICK TOWNSEND & STOCKTON LLP
1420 Fifth Avenue, Suite 3700 Seattle, WA 98101
206-467-9600

skew the results of the hypothetical negotiation.").

In line with these controlling legal precedents of the Federal Circuit on this issue, district courts consistently exclude expert testimony and opinions relying on non-comparable license agreements as unreliable under *Daubert*—even when the licenses are proffered or relied on for limited purposes. *See, e.g.*, *Open Text S.A. v. Box, Inc.*, No. 13-CV-04910-JD, 2015 WL 349197, at *5 (N.D. Cal. Jan. 23, 2015); *TV Interactive Data Corp. v. Sony Corp.*, 929 F. Supp. 2d 1006, 1016 (N.D. Cal. 2013); *I/P Engine, Inc. v. AOL Inc.*, No. 2:11-CV-512, 2012 WL 12068846, at *2 (E.D. Va. Oct. 12, 2012).

For example, in *Open Text*, the court excluded expert opinion regarding a "bargaining range" for a royalty rate based exclusively on non-comparable licenses. 2015 WL 349197, at *5. The court further held that "[t]his testimony bar applies across the board, including any attempt to mention the non-comparable licenses as 'background' evidence." *Id.* The court explained that the fact that the agreements did not qualify as comparable licenses under the Federal Circuit's precedents "leaves no room for some sort of soft or 'suggestive' reliance." *Id.* (citation omitted). Rather, the court held that the non-comparable licenses were wholly "irrelevant" and "simply [have] no place in this case." *Id.* (citing *LaserDynamics*, 694 F.3d at 80).

Likewise, in *I/P Engine*, the court specifically rejected the defendants argument that non-comparable licenses are "still relevant and admissible evidence to show [the defendant's] preferences toward lump sum royalty payments." 2012 WL 12068846, at *2.[3] The court explained: "[T]he Federal Circuit has made clear that non-comparable licensing cannot be used as the basis for determining a reasonable royalty. Because the form of the royalty is equally important as the amount of the royalty, the Court concludes that if an agreement is non-comparable as to one aspect of the royalty question, it is non-comparable as to all aspects." *Id.*

In *TV Interactive*, the court excluded a damages expert from referring to the royalty rates in the defendants' licenses that the expert admitted were "not comparable to the technology of the patents-in-suit." 929 F. Supp. 2d at 1016. The defendants nonetheless argued that the expert

---

[3] The *I/P Engine* court noted that expert had conceded that the agreements were not comparable as "he placed no value or importance on their settlement amounts" (2012 WL 12068846, at *2)— ████████████████████████████████████ (Ex. 6, at ¶ 121).

"should be permitted to opine on the [] licenses because [he] only uses the [] licenses for the limited purpose of noting that they 'support' his royalty rate and do not support [plaintiff's] expert['s] [] royalty rate." *Id.* The court disagreed, noting the "argument is without merit." *Id.* The court specifically cited "the Federal Circuit's well established precedent requiring some degree of comparability between licenses used in the *Georgia-Pacific* analysis for the jury to weigh." *Id.* The court also noted that the Federal Circuit has criticized a district court's denial of a *Daubert* motion because that "ruling erroneously permitted continued reliance on this evidence where comparability between it and a hypothetical license to the [infringed patent] was absent." *Id.* (citing *LaserDynamics*, 694 F.3d at 80).

## IV.   THE COURT SHOULD EXCLUDE MR. VOTH'S TESTIMONY AND OPINIONS REGARDING DEFENDANTS' PAST PATENT LICENSE AGREEMENTS

Mr. Voth's testimony and opinions regarding Defendants' past patent license agreement should be excluded as unreliable under the *Daubert* standard. Mr. Voth essentially concedes that Defendants' past ▬▬▬▬ agreements are not comparable, and relatedly fails to provide any accounting for the differences in the technical and economic circumstances associated with those agreements as compared to the hypothetical negotiation here. Given the absence of this fundamental accounting, controlling law prohibits Mr. Voth from relying on Defendants' past ▬▬▬▬ agreements in any way, shape, or form in support of his opinions.

### A.   Mr. Voth Fails to Account for Technological Differences

Mr. Voth fails to provide any accounting for the technical differences between the subject matter licensed in Defendants' past agreements and that of the '803 Patent here. *See* Ex. 6, at ¶¶ 118–123, Schedule 23.0 AM. Tellingly, Mr. Voth's report never sets forth an opinion that Defendants' past agreements are technologically "comparable" to the hypothetical negotiation here—▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. *See* Ex. 6, at ¶¶ 118–123; Ex. 7, at 76:2–11. The absence of any "comparability" analysis that accounts for the technological differences between subject matter licensed in Defendants' respective past agreements and the '803 Patent by Mr. Voth is unsurprising. As noted above, ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

███████████████████████████████████████████████████████████████████

██████. *See* Ex. 7, at 48:23–49:8, 76:12–25.

Despite these failings, Mr. Voth is of the opinion that the patented technology in each of Defendants' past agreements is nonetheless "comparable" to the technology at issue here simply because ████████████████████████████ Ex. 7, at 77:8–17; *see* Ex. 6, ¶ 120 ("████████ ██████████████████████████████████████"). Mr. Voth is of the understanding that ██████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████. Ex. 7, at 77:18–78:3.

Mr. Voth's understanding of the law is incorrect, however. As noted above, the Federal Circuit has held that "alleging a loose or vague comparability between different technologies or licenses"—as Mr. Voth does here—"does not suffice" to demonstrate technological comparability under the *Georgia-Pacific* factors. *LaserDynamics*, 694 F.3d at 79. Indeed, the basis for Mr. Voth's comparability is similar to that rejected in *Lucent* (same general computer field, e.g., "PC-related patents"). 580 F.3d at 1330–32.

Moreover, the vague technological comparability alleged by Mr. Voth here is not reliably based on sufficient facts or data. *See* Fed. R. Evid. 702. As a fundamental point, Mr. Voth concedes that Defendants' past agreements ████████████████████████████████ ██████████████████████████████████ Ex. 7, at 79:8–19. Despite this fact, Mr. Voth admittedly did not ██████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████ *See* Ex. 7, 75:19–76:1, 76:12–25.

Rather, Mr. Voth relied solely on his ████████████████████████ ████████████████████████████████████████████ to conclude, in cursory fashion, that each of Defendants' ██ past patent licenses agreements is generally "comparable" to the technology claimed in the patent-in-suit. Ex. 7, 74:23–76:1. This is plainly insufficient. An "expert's opinion … must reflect something more than subjective belief and/or unsupported

speculation." *Avocent*, 2013 WL 8844098, at *2. Moreover, Mr. Voth's conclusion that each of Defendants' ▮ past agreements is technologically "comparable" to the '803 Patent is directly rebutted by Ms. Otter's sworn deposition testimony, in which she ▮▮▮▮▮ ▮▮▮▮▮ Ex. 9, at 86:8–87:22.

The flaws in the cursory, lay opinion of Mr. Voth regarding the purported technological comparability of Defendants' past agreements to the hypothetical negotiation here are further evidenced by the examples of those agreements Mr. Voth discussed at his deposition. It is Mr. Voth's opinion that Defendants' past agreements that ▮▮▮▮▮ ▮▮▮▮▮ (Ex. 7, at 80:1–3) are technologically "comparable" to the subject matter of the '803 Patent. Such an alleged vague, loose comparability—which is based exclusively on a *non*-technical, *lay* reading—simply "does not suffice" under controlling Federal Circuit precedents, however. *LaserDynamics*, 694 F.3d at 79.

### B. Mr. Voth Fails to Account for Economical Differences

Mr. Voth also fails to provide any accounting for differences in the economic circumstances associated with Defendants' past agreements as compared to the hypothetical negotiation here. *See* Ex. 6, at ¶¶ 118–123. Quite the opposite, Mr. Voth readily acknowledges the stark difference in the economic circumstances of Defendants' past agreements given that ▮▮▮▮▮. *See* Ex. 6, at ¶¶ 120–121. As such, Mr. Voth specifically notes that ▮▮▮▮▮ ▮▮▮▮▮ Ex. 6, ¶ 120.

Despite this concession, Mr. Voth nonetheless opines that ▮▮▮▮▮ ▮▮▮▮▮ ▮▮▮▮▮ ▮▮▮▮▮ Ex. 6, at ¶ 122. In doing so, however, Mr. Voth never accounts for the admitted differences in the economic circumstances of Defendants' past agreements. And as discussed above, the Federal Circuit itself has identified the circumstances underlying settlement agreements as fundamentally different than those underlying the hypothetical negotiation. *LaserDynamics*, 694 F.3d at 77. For that very reason, the Federal Circuit has a 'longstanding

disapproval of relying on settlement agreements to establish reasonable royalty damages" under the *Georgia-Pacific* factors. *Id.* That longstanding principle applies here—especially given Mr. Voth's failure to account for the technological differences in associated with Defendants' past agreements as compared to the hypothetical negotiation here as well.

### C. Defendants' Irrelevant, Non-Comparable Licenses, and Mr. Voth's Testimony and Opinions Regarding the Same, Have No Place in this Case

For the reasons set forth above, precedent prohibits Mr. Voth from relying on Defendants' past agreements in any way, shape, or form in support of his opinions; and his testimony and opinions regarding those agreements should be excluded. In short, given Mr. Voth's concession ▮▮▮▮▮ (Ex. 6, at ¶ 121), the agreements are "non-comparable as to *all aspects*" of the royalty question. *I/P Engine*, 2012 WL 12068846, at *2 (emphasis added).

Defendants' past patent license agreements themselves should also be excluded to ensure exclusion of Mr. Voth's impermissible testimony. *See I/P Engine*, 2012 WL 12068846, at *2. As the *Open Text* court correctly held and acknowledged, given that Defendants have failed to demonstrate that their past agreements qualify as comparable licenses under the Federal Circuit's precedents, the licenses are "irrelevant" and "simply [have] no place in this case." 2015 WL 349197, at *5 (citing *LaserDynamics*, 694 F.3d at 80). Indeed, Defendants themselves have characterized the agreements as "irrelevant." Exs. 1–2 (Interrogatory No. 5).

The rationale underlying the court's decision in *Open Text* applies equally here. There, the court was concerned that the damages expert may impermissibly attempt to "mention the non-comparable licenses as 'background' evidence" or otherwise use the licenses as "some sort of soft or 'suggestive' reliance." 2015 WL 349197, at *5. That is exactly what Mr. Voth is attempting to do here. He essentially concedes that Defendants' past license agreements are not comparable—by acknowledging ▮▮▮▮▮, and relatedly failing to account for the differences in the technical and economic circumstances associated with the agreements as compared to the hypothetical negotiation here. Mr. Voth nonetheless attempts to use the conceded non-comparable agreements

1  as "soft" or "suggestive" evidence as to 

2  . Ex. 6, at ¶ 122.

3  This is impermissible. "Non-comparable licenses cannot be used to determine [] the form [] of a reasonable royalty." *I/P Engine*, 2012 WL 12068846, at *2. Given Mr. Voth's fundamental failure to account for the for the differences in the technical and economic circumstances associated with Defendants' past agreements as compared to the hypothetical negotiation here, he is precluded from relying on those agreements "across the board." *Open Text*, 2015 WL 349197, at *5; *see I/P Engine*, 2012 WL 12068846, at *2 (excluding non-comparable licenses where expert attempted to rely on them for purpose of "form" of royalty); *TV Interactive*, 929 F. Supp. 2d at 1016 (excluding expert from relying on non-comparable licenses for "limited purpose" of purportedly validating his royalty rate).

To ensure this full and complete bar, Defendants' past agreements themselves should be excluded, as they are admittedly "irrelevant," and thus "simply [have] no place in this case." *Open Text*, 2015 WL 349197, at *5 (citing *LaserDynamics*, 694 F.3d at 80). Indeed, as noted by the court in *TV Interactive*, the Federal Circuit has specifically criticized a district court's denial of a *Daubert* motion because that "ruling erroneously permitted continued reliance on [a past license agreement] where comparability between it and a hypothetical license to the [infringed patent] was absent." 929 F. Supp. 2d at 1016 (citing *LaserDynamics*, 694 F.3d at 80). Thus, to ensure preclusion of Mr. Voth's impermissible reliance on Defendant's self-admitted "irrelevant" licenses, those agreements—like Mr. Voth's related testimony—should be excluded.

## V.  CONCLUSION

For the reasons above, Corus respectfully requests that the Court grant Corus's Daubert Motion Challenging Expert Testimony and exclude Mr. Voth's testimony and opinions regarding Defendants' past patent license agreements, and likewise exclude Defendants' "irrelevant" past patent license agreements themselves as well.

| | | |
|---|---|---|
| 1 | DATED: November 12, 2019 | **KILPATRICK TOWNSEND & STOCKTON LLP** |
| 2 | | *s/ Joshua H. Lee* |
| 3 | | Dario Machleidt (State Bar No. 41860) |
| | | Kilpatrick Townsend & Stockton LLP |
| 4 | | 1420 Fifth Avenue, Suite 3700 |
| | | Seattle, WA 98101 |
| 5 | | 206-467-9600 |
| 6 | | Mitch Stockwell (*pro hac vice*) |
| 7 | | Wab Kadaba (*pro hac vice*) |
| | | Charles Pannell (*pro hac vice*) |
| 8 | | Josh Lee (*pro hac vice*) |
| | | Kilpatrick Townsend & Stockton LLP |
| 9 | | 1100 Peachtree Street NE, Suite 2800 |
| | | Atlanta, GA 30309 |
| 10 | | 404-815-6500 |
| 11 | | |
| 12 | | Kasey E. Koballa (*pro hac vice*) |
| | | Kilpatrick Townsend & Stockton LLP |
| 13 | | 607 14th Street, NW Suite 900 |
| | | Washington, DC 20005 |
| 14 | | 202-508-5800 |
| 15 | | *Attorneys for Plaintiff Corus Realty Holdings, Inc.* |

## CERTIFICATE OF SERVICE

I, Joshua H. Lee, hereby certify that on November 12, 2019, I caused a true and correct copy of the foregoing **CORUS REALTY HOLDINGS, INC.'S DAUBERT MOTION CHALLENGING EXPERT TESTIMONY [REDACTED]** to be filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to CM/ECF participants.

*s/ Joshua H. Lee*
Joshua H. Lee