UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CORUS REALTY HOLDINGS, INC., | CASE NO. C18-0847JLR |
| Plaintiff, | ORDER GRANTING DEFENDANTS' MOTION TO EXCLUDE UNTIMELY INFRINGEMENT THEORIES |
| v. | |
| ZILLOW GROUP, INC., et al., | |
| Defendants. | |

## I.   INTRODUCTION

Before the court is Defendants Zillow Group, Inc., Zillow, Inc., and Trulia, LLC's

(collectively, "Zillow") motion to exclude testimony or opinions pertaining to theories of

patent infringement that were introduced for the first time in the opening expert report of

Dr. David Martin.  (*See* MTE (Dkt. # 58).)  Plaintiff Corus Realty Holdings, Inc.

("Corus") opposes Zillow's motion.  (*See* Resp. (Dkt. # 79).)  The court has considered

Zillow's motion, the parties' submissions filed in support of and in opposition to the

motion, the relevant portions of the record, and the applicable law.  Being filly advised,[1]

the court GRANTS Zillow's motion and EXCLUDES the testimony and opinions at issue.

## II.    BACKGROUND

**A.    Overview of the Case Schedule**

This is a patent infringement case.  (*See generally* Compl. (Dkt. # 1).)  Corus

timely served its infringement contentions on December 7, 2018.  (*See* Stark Decl. (Dkt.

## 59 (redacted), 60 (sealed)) ¶ 6, Ex. 4 (attaching a copy of Corus's Preliminary

Infringement Contentions with Exhibits 1-5 (hereinafter cited as "PIC")); *see also* Sched.

Order (Dkt. # 22) at 1 (setting a December 7, 2018, deadline for Corus's infringement

contentions).)  Zillow timely served its noninfringement and invalidity contentions on

December 28, 2018.  (*See* Stark Decl. ¶ 7, Ex. 5 (attaching a copy of Zillow's Preliminary

Noninfringement and Invalidity Contentions with Exhibit A (hereinafter cited as "PNIC");

*see also* Sched. Order at 1 (setting a December 28, 2018, deadline for Zillow's

noninfringement contentions).)  Neither party has moved to amend their contentions

statements.  (*See generally* Dkt.)

The parties exchanged lists of proposed claim terms for construction in January

2019, and then preliminary proposed constructions and extrinsic evidence on February 15,

2019.  (*See* 1st Am. Sched. Order  (Dkt. # 34).)  Zillow served Corus with an expert

//

//

---

[1] Neither party asked for oral argument on Zillow's motion (*see* MTE; Resp.), and the court does not consider oral argument to be helpful to its disposition of the motion, *see* Local Rules W.D. Wash. LCR 7(b)(4).

claim construction report on February 22, 2019, and Corus served Zillow with a rebuttal report on March 22, 2019.  (*Id.*)  On April 2, 2019, the parties submitted a Joint Claim Chart on Prehearing Statement for claim construction; on April 26, 2019, they filed their opening briefs; and on June 14, 2019, the court held a *Markman*[2] claims construction hearing.  (*Id.*)  On July 2, 2019, the court issued its claim construction order.  (*See* CC Order (Dkt. # 51).)

The parties exchanged opening expert reports on August 30, 2019, and rebuttal expert reports on September 27, 2019.  (*See* 2d Am. Sched. Order (Dkt. # 50) at 2; *see also* Stark Decl. ¶¶ 8-13, Exs. 6-11 (attaching appendices to Dr. Martin's opening expert report).)  The discovery deadline expired on October 11, 2019.  (2d Am. Sched. Order at 2.)  The deadline for dispositive motions and motions challenging expert witness testimony expired on November 12, 2019.  (*Id.*)  The parties timely filed cross motions for summary judgment and motions to exclude various expert witnesses.  (*See* Plf. MPSJ (Dkt. # 65); Def. MSJ (Dkt. # 68); Plf. MTE (Dkt .# 69); Def. MTE1 (Dkt. # 72); Def. MTE2 (Dkt. # 74).)  The court has not yet ruled on these motions.  (*See generally* Dkt.)

The court scheduled the pretrial conference on February 18, 2020, and set trial to commence on March 2, 2020.  (Sched. Order at 1-2.)

**B.    Production of Zillow's Source Code**

On August 26, 2018, Corus served document requests on Zillow that included requests for source code of the accused products.  (*See* Parnell Decl. (Dkt. # 79-1) ¶ 3, Ex.

---

[2] *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 388 (1996) ("[F]or judges, not juries, are the better suited to find the acquired meaning of patent terms.").

3 (attaching a copy of Corus's First Set of Requests for Production ("RFPs") to Zillow).)

Zillow initially objected to the production of its source code. (*See id.* ¶ 4, Ex. 4 (attaching

Zillow's responses to Corus's RFPs).) Nevertheless, on November 16, 2018, Zillow's

counsel informed Corus that Zillow's source code was available for inspection. (Stark

Decl. ¶ 1, Ex. 1.)

On November 26, 2018, Corus requested that Zillow install Windows software

tools on a source code computer to aid Corus's inspection. (*Id.* ¶ 4, Ex. 2.) Zillow

provided a Windows-based review computer with the requested Windows tools. (*See id.*

¶ 5, Ex. 3 (attaching a January 15, 2019, email from Corus's counsel confirming that

"[d]uring the last review, [Corus's counsel] found that the review computer was set up

with the requested tools and we thank you for that").)

Corus's expert witness, Dr. David Martin, first inspected Zillow's source code on

December 4, 2018. (*Id.* ¶ 3.) Dr. Martin testifies that the source code that Zillow initially

provided was incomplete because it lacked an accused product and key files and was

disclosed in a manner that could not be efficiently reviewed. (*See* Martin Decl. (Dkt.

# 80) ¶¶ 10-14.) Further, Zillow's employees regularly wrote and preferred to review the

code from Apple Mac computers. (*See* Parnell Decl. ¶ 30, Ex. 30 ("Yamanaka Dep.") at

91-92, 156:17-25, 204-05, 207-08; *id.* ¶ 32, Ex. 32 ("Perrin Dep.") at 160:13-16, 188.) In

addition, Dr. Martin attests that the files contained "dead code" that was not used, but that

could not be confirmed absent depositions due to Zillow's insistence that the code be

neither compiled nor executed. (Martin Decl. ¶¶ 16-17.) All of these issues rendered

difficult Dr. Martin's code review. (*Id.* ¶ 18; Perrin Dep. at 150-53, 189-94.)

On January 15, 2019, Corus requested that Zillow provide the source code for review on an Apple computer (in addition to the Windows-based computer), along with additional inspection software. (*See id.*; *see also* Parnell Decl. ¶ 9, Ex. 9.) Zillow complied with this request, but again required that Corus neither compile nor run the code. (*See* MTE at 3; *see also* Parnell Decl. ¶ 10, Ex. 10.)

Dr. Martin subsequently inspected Zillow's source code on at least 15 other occasions, including January 24-25, January 28-30, March 11-15, March 18-19, and August 26-28, 2019. (Stark Decl. ¶ 3.) On March 19, 2019, Dr. Martin identified and requested that Zillow print certain files comprising less than 0.07% of the provided code.[3] (Martin Decl. ¶ 19.) Zillow initially objected to this request because it encompassed more pages than allowed in the parties' stipulated protective order, which sets forth the rules on how Zillow produces code and limitations on the amount of code subsequently printed on paper. (*See* Stip. Prot. Order (Dkt. # 30) at 11-13; *see also* Parnell Decl. ¶ 11, Ex. 11.) After negotiations between the parties, and Corus's agreement to reduce its request to only two files that exceeded the page limit, Zillow agreed to Corus's narrowed code request and produced it on May 17, 2019. (*See* Parnell Decl. ¶¶ 12-20, Exs. 12-21.)

Even with the files printed, Dr. Martin required depositions of Zillow's technical witnesses to understand how the code operated when it ran. (Martin Decl. ¶ 20.) On May 17, 2019—the same day that Zillow produced the printed code to Corus—Corus served Federal Rule of Civil Procedure 30(b)(6) deposition notices on Zillow seeking information

---

[3] Even with the files printed, Dr. Martin required depositions of Zillow's technical witnesses to understand how the code operated when it ran. (Martin Decl. ¶ 20.)

on specific functions of the source code.  (*See* Parnell Decl. ¶ 22, Ex. 22 at 9 (Topic 2).)

After the parties agreed to extend the discovery deadline and the court so ordered, Zillow

produced its Rule 30(b)(6) designees, and Corus conducted its depositions on July 19, 23,

and August 8, 2019.  (*See* Resp. (Dkt. # 79) at 4; *see also* 2d Am. Sched. Order.)

Following the Rule 30(b)(6) depositions, Dr. Martin sought a final review of the

code, which the parties scheduled during the week his expert report was due.  (*See* Martin

Decl. ¶¶ 21-23.)  On August 30, 2019, less than six weeks before the discovery cutoff,

Corus served Dr. Martin's expert report on Zillow.  (*See* Resp. at 5; *see also* 2d Am.

Sched. Order.)  Zillow engaged Dr. Benjamin B. Bederson as its expert, and Zillow served

his rebuttal expert report in response to Dr. Martin's report on September 27, 2019.  (*See*

Resp. at 5.)

## C.    Corus's Infringement Contentions and Zillow's Noninfringement and Invalidity Contentions

The asserted claims require property information to be stored in a "database" on the

mobile device or phone.  (*See* U.S. Patent No. 6,636,803 (Dkt. # 1-1) at claim 1 (limitation

1c recites "wherein said property information is obtained from a remote data source and a

database stored on said data-enabled mobile phone"); *id.* at claim 30 (limitation 30b

recites "wherein said property information is obtained from a remote data source and

stored in a database on the mobile computing device"); *see also* CC Order at 36

(construing claim 14 limitation 14c to include a "device capable of storing property

information in a database on the mobile computing device").)

*//*

As noted above, Corus served its infringement contentions on December 7, 2018. (*See generally* PIC.)  Corus's infringement allegations pertain in part to how the accused products satisfy the "database" limitations.  (*See generally id.*)  For example, the complete allegation against the Zillow mobile application for this limitation in claim 1 (limitation 1c) is:

| Element | Claims | Accused Elements, Structure, and Acts of the Zillow Real Estate Application[1] |
|---|---|---|
| 1c | [c] obtaining current status property information for an item of property in the residential real-estate market for the area of interest, wherein said property information is obtained from a remote data source and a database stored on said data-enabled mobile phone, wherein the current status property information includes multiple listing service (MLS) data comprising a location, a market price and a market status of the item of property; | The Zillow mobile application is designed and configured to obtain and provide to users, current property information for property in a residential real-estate market for the area of interest shown on the digital map.  Property information, such as location, market price, and market status, is obtained by Defendants from multiple listing services ("MLS"). 2017 Zillow Annual Report, p. 22 available at http://investors.zillowgroup.com/annuals-proxies.cfm; https://zillow.zendesk.com/hc/en-us/articles/213394668-Where-does-Zillow-get-its-listings-<br><br>Property information for multiple listings indicate the source is from an MLS number.<br><br><br><br>*See, e.g.,* CORUS0003641; *see also* CORUS0003623. |

//

//

//

//

//

//

//

//

| Element | Claims | Accused Elements, Structure, and Acts of the Zillow Real Estate Application[1] |
|---|---|---|
| | | The property information is stored by Defendants on network servers for access by mobile applications and website visitors. When an area of interest is selected by a user, the application is designed and configured to download property information for that area (including location, market price, and market status) from Defendants' remote network servers. The application will store a database relating to the property information on the user's mobile phone for use by the application as the user browses to different properties. As a user selects properties of interest, the application will continue to download additional information on the property to supplement the property information initially obtained for the area of interest.  CORUS0003637; *see also* CORUS0003619. |

(PIC, Ex. 1 at 7-8 (limitation 1c); *see also id.*, Ex. 1 at 29 (limitation 14c), 47-48 (limitation 30b).)

The "database" allegations against the other accused products are similar. (*See id.*, Ex. 2 at 8-9 (charting limitation 1c against Trulia mobile application), 30 (charting limitation 14c against Trulia mobile application), 47-48 (charting limitation 30b against Trulia mobile application); *see also id.*, Ex. 3 at 6 (charting limitation 14c against Zillow rental application), 27-28 (charting limitation 30b against Zillow rental application); *see also id.*, Ex. 4 at 7-8 (charting limitation 14c against Trulia rental application), 29-30 (charting limitation 30b against Trulia rental application); *see also id.*, Ex. 5 at 7-8 (charting limitation 1c against Hotpads application), 33 (charting limitation 14c against Hotpads application), 57-58 (charting limitation 30b against Hotpads application).)

//

Corus's infringement allegations do not include citations to any source code or software components or allegations of infringement based on the doctrine of equivalents. (*See generally id*.)

In response to Corus's infringement allegations, Zillow served its noninfringement and invalidity contentions on December 28, 2019.  (*See generally* PNIC.)  Zillow specifically noted that Corus "failed to cite or otherwise identify any code for the mobile applications that it alleges to infringe."  (*Id.* at 2.)  Zillow also noted that Corus's contentions "failed to identify what specifically it alleges constitutes the alleged 'database.'"  (*Id.*, Ex. A at 11, 18.)  Finally, Zillow pointed out that Corus's infringement contentions did not disclose any doctrine of equivalents theories.  (*Id.* at 4 ("[Corus] has failed to disclose any theory of infringement based on the doctrine of equivalents; accordingly, [Zillow] ha[s] nothing to respond to.").)

**D.     Dr. Martin's Expert Infringement Report**

On August 30, 2019, Dr. Martin submitted his expert report regarding alleged infringement.  (*See* Stark Decl. ¶¶ 8-16, Exs. 6-11.)  Dr. Martin's report discloses how each of the accused products allegedly meets the claim limitations that require storing a "database" of property information.  (*See id.*)  Dr. Martin asserts that the accused products meet the limitation by requiring a "required database" that he argues is apparent by the "behavior" of the accused products as a user browses properties in an area of interest. (*See id*. ¶ 8, Ex. 6 ¶ 53; *id.* ¶ 9, Ex. 7 ¶ 53; *id.* ¶ 10, Ex. 8 ¶ 53; *id.* ¶ 11, Ex. 9 ¶ 45; *id.* ¶ 12, Ex. 10 ¶ 44; *id.* ¶ 13, Ex. 11 ¶ 35.)

//

Dr. Martin then states that he has "additional" theories regarding how the accused products meet the database limitation. For example, with respect to Zillow, Dr. Martin states: "Although this 'required' database satisfies the 'stored in a database on the mobile computing device' limitation, I identified *additional* databases that also satisfy the limitation." (*See id*. ¶ 8, Ex. 6 ¶ 54 (italics added); *see also id.* ¶ 9, Ex. 7 ¶ 54; *id.* ¶ 10, Ex. 8 ¶ 54; *id.* ¶ 11, Ex. 9 ¶ 46; *id.* ¶ 12, Ex. 10 ¶ 45; *id.* ¶ 13, Ex. 11 ¶ 36.)

Indeed, Dr. Martin identifies five additional theories, other than the "required" database, for how each accused product meets the "database" limitation. For Zillow, Dr. Martin identifies: (1) "MapCardPager Adapter" (*id.* ¶ 9, Ex. 7 ¶¶ 62-65, 69, 132); (2) "Google Maps Marker" (*id.* ¶ 9, Ex. 7 ¶¶ 59, 66-70, 132); (3) "mMappableItemToMarker" (*id.* ¶ 9, Ex. 7 ¶¶ 71, 132); (4) "NSURLCache" (*id.* ¶ 8, Ex. 6 ¶¶ 54-55, 61, 64, 135); and (5) "MapKit Annotation" (*id.* ¶ 8, Ex. 6 ¶¶ 54, 56, 61, 65-71, 135). For Trulia, he identifies: (1) "MarkerMap" (*id.* 11, Ex. 9 ¶¶ 53-55, 63, 121); (2) "Google Maps Marker" (*id.* ¶ 11, Ex. 9 ¶¶ 50, 56-58, 121); (3) "NURSLCache" (*id.* ¶ 10, Ex. 8 ¶¶ 54-55, 62, 64, 67, 141); (4) "MapKit Annotation" (*id.* ¶ 10, Ex. 8 ¶¶ 54, 56, 64, 68-73, 141); and (5) "Core Data" (*id.* ¶ 10, Ex. 8 ¶¶ 54, 57, 63, 74). Finally, for Hotpads, he identifies: (1) "MarkerHashMap" (*id.* ¶ 13, Ex. 11 ¶¶ 42-45, 105); (2) "Google Maps Marker" (*id.* ¶ 13, Ex. 11 ¶¶ 39, 45-48, 105); (3) "NSURLCashe" (*id.* ¶ 12, Ex. 10 ¶¶ 45-46, 51, 54, 120); (4) "MapKit Annotation" (*id.* ¶ 12, Ex. 10 ¶¶ 45, 47, 51, 55-60, 120); and (5) "ListingPreviewDictionary" (*id.* ¶ 12, Ex. 10 ¶¶ 45, 48, 56, 61, 120). None of these additional databases or theories are disclosed in Corus's infringement contentions. (*See generally* PIC.) In fact, Corus admits that it "could not name the ultimate databases . . .

that resulted in infringement" at the time it served its infringement contentions and before it completed its source code review.  (Resp. at 5.)

Dr. Martin's report also identifies source code for the first time that allegedly supports these new theories.  For example, Dr. Martin's report relies on source code for the accused Zillow products.  (*See, e.g.*, Stark Decl. ¶ 9, Ex. 7 ¶¶ 35-36, 41-42, 59-71, 75-76 80-81, 88-92, 96-97, 109, 125, 155; *id.* ¶ 8, Ex. 6 ¶¶ 35-36, 41-42, 61-71, 75-76, 81-82, 92-93, 97-98, 111-12, 127, 158, 172.)  Further, Dr. Martin's report relies on source code for the accused Trulia products.  (*See, e.g.*, *id.* ¶ 7, Ex. 9 ¶¶ 33-34, 39-40, 50-58, 62-63, 67-68, 79-80, 84-85, 98, 114, 144; *id.* ¶ 10, Ex. 8 ¶¶ 34-35, 40-41, 64-67, 78-79, 84-85, 98-99, 103-14, 117-18, 14, 164, 179.)  In addition, Dr. Martin's report relies on source code for the accused Hotpads products.  (*See, e.g.*, *id.* ¶ 13, Ex. 11 ¶¶ 24-25, 30-31, 39-48, 52-53, 57-58, 64-65, 69-70, 82, 98; *id.* ¶ 12, Ex. 10 ¶¶ 26-27, 32-33, 51-61, 65-66, 78-79, 83-84, 96-97, 113, 152.)  Yet, Corus's infringement contentions do not identify any source code.  (*See generally* PIC.)  Indeed, Corus admits that it "could not . . . pinpoint the exact code that resulted from infringement" at the time it served its infringement contentions and before it completed its source code review.  (Resp. at 5.)

Finally, Dr. Martin's expert report also includes opinions that the accused Trulia products infringe under the doctrine of equivalents.  (*See* Stark Decl. ¶ 11, Ex. 9 ¶¶ 69-73; *id.* ¶ 10, Ex. 8 ¶¶ 86-90.)  Corus's infringement contentions do not contain any claims under the doctrine of equivalents.  (*See generally* PIC.)

On September 13, 2019, Zillow's counsel sent a letter to Corus's counsel objecting to the new infringement theories and asking Corus not to pursue them.  (*See* Stark Decl.

¶ 14, Ex. 12.)  Corus responded on September 20, 2019, declining Zillow's request.  (*Id.* ¶ 15, Ex. 13.)

### III.    ANALYSIS[4]

The Local Patent Rules require the plaintiff's infringement contentions to include a chart "identifying specifically where each element of each Asserted Claim is found within each Accused Device."  *See* Local Patent Rule 120(c).  The Rules also require the plaintiff's infringement contentions to state "[w]hether each element of each asserted claim is claimed to be literally present and/or present under the doctrine of equivalents in the Accused Device."  *See* Local Patent Rule 120(e).  These requirements serve a notice function.[5]  *See Phigenix, Inc. v. Genentech, Inc.*, 783 F. App'x 1014, 1018 (Fed. Cir. 2019).  Indeed, they "bolster discovery" under the Federal Rules because they "'allow the defendant to pin down the plaintiff's theories of liability . . . thus confining discovery and trial preparation to information that is pertinent to the theories of the case.'"  *Id.* (quoting *O2 Micro Int'l Ltd.*, 467 F.3d at 1365).

//

//

---

[4] Corus argues that Zillow's motion is an out-of-time discovery motion.  (*See* Resp. at 16-17.)  The court disagrees.  Zillow's motion does not seek to compel discovery but rather challenges expert testimony.  (*See generally* MTE.)  As such, Zillow's motion was timely filed.  (*See* 2d Am. Sched. Order at 2 (setting the deadline for "challenging expert witness testimony" on November 12, 2019).)

[5] A district court has wide discretion in enforcing the Patent Local Rules.  *See SanDisk Corp. v. Memorex Prods., Inc.*, 415 F.3d 1278, 1292 (Fed. Cir. 2005) ("The district court's application of the local rules are within its sound discretion[.]"); *see also O2 Micro Int'l Ltd. v. Monolithic Power Systems, Inc.*, 467 F.3d 1355, 1365-66 (Fed. Cir. 2006) ("Decisions enforcing local rules in patent cases will be affirmed unless clearly unreasonable, arbitrary, or fanciful; based on erroneous conclusions of law; clearly erroneous; or unsupported by any evidence.").

A party may amend its contentions upon a timely showing of good cause. Local Patent Rule 124. In cases involving software allegations, the party asserting infringement has an obligation to "promptly and appropriately" amend its contentions to identify pinpoint citations to source code after it has had the opportunity to review the code. *REC Software USA, Inc. v. Bamboo Sols. Corp.*, No. C11-0554JLR, 2012 WL 3545056, at *3 (W.D. Wash. Aug. 16, 2012) ("[A]lthough a plaintiff need not initially provide such specific pinpoint citations in its infringement contentions, once it has had sufficient time to review the accused source code, the plaintiff is under an obligation to promptly and appropriately amend its infringement contentions."); *see also Treehouse Avatar LLC v. Valve Corp.*, No. C17-1860-RAJ, 2019 WL 917403, at *3 (W.D. Wash. Feb. 25, 2019) ("[T]he Court finds that because this case involves a patent applied to computer software, and [the plaintiff] has had access to that software's source code for nearly a year, the *REC Software* approach should apply.").

An expert report may not advance a new or alternate theory of infringement that was not disclosed in the party's contentions. *Adobe Sys. Inc. v. Wowza Media Sys.*, No. 11-CV-02243-JST, 2014 WL 709865, at *13 (N.D. Cal. Feb. 23, 2014); *KlausTech, Inc. v. Google LLC*, No. 10CV05899JSWDMR, 2018 WL 5109383, at *3 (N.D. Cal. Sept. 14, 2018) ("[E]xpert reports cannot go beyond the bounds of the disclosed infringement theories and introduce new theories not disclosed in the contentions.").[6] Specifically, "[i]n

---

[6] Courts in the Western District of Washington look to Northern District of California decisions for guidance due to the similarity between the districts' patent rules. *See REC*

the context of patent infringement cases involving software, an expert cannot theorize that

certain functions satisfy a claim limitation, unless those functions were previously

identified in the party's infringement contentions." *Adobe Sys. Inc*., 2014 WL 709865, at

*13.

## A.      Dr. Martin's Report Advances New Infringement Theories

Courts strike infringement theories contained in expert reports that the plaintiff did

not disclose in its infringement contentions. *See id.* at *14-15 (granting a motion to strike

an infringement theory disclosed for the first time in an expert report and stating that, to

the extent the plaintiff's contentions on the infringement theory at issue were ambiguous,

"[t]his ambiguity must be construed against [the plaintiff] in light of the purpose of the

patent local rules, which is to establish the universe of infringement theories that will be

litigated in any given case"); *ASUS Computer Int'l v. Round Rock Research, LLC*, No.

12-CV-02099 JST (NC), 2014 WL 1463609, at *4 (N.D. Cal. Apr. 11, 2014)  (granting a

motion to strike portions of an expert report that described a previously undisclosed

infringement theory, stating that the plaintiff "cannot clarify its theory at this late stage of

the litigation through an expert report"); *see also Thought, Inc. v. Oracle Corp*., No.

12-CV-05601-WHO, 2016 WL 3230696, at *7 (N.D. Cal. June 13, 2016), *aff'd*, 698 F.

App'x 1028 (Fed. Cir. 2017); *KlausTech*, 2018 WL 5109383, at *6.  Here, Dr. Martin's

expert report advances new theories of infringement that were not disclosed in Corus's

---

*Software USA*, 2012 WL 3545056, at *2; *see also Treehouse Avatar, LLC*, 2019 WL 917403, at
*2 n.1 (noting that the Local Patent Rules of the Northern District of California "serve as a
model for this District").

contentions, including:  (1) five additional new theories of "databases" for each accused

product; (2) recitation to and reliance upon source code for each accused product; and (3)

doctrine of equivalents theories against Trulia products.  *See supra* § II.  The court will

address each in turn.

1.  Five New Database Theories for Each Accused Device

First, with respect to the five new theories regarding infringement of the "database"

limitations, Local Patent Rule 120(c) requires Corus to "identify[] specifically where each

element of each Asserted Claim is found within each Accused Device."  *See* Local Patent

Rule 120(c).  Yet, Dr. Martin introduced five "additional" theories per accused device for

how each product allegedly meets the "database" limitations, *see supra* § II, none of

which are identified in Corus's infringement contentions (*see generally* PIC).  Indeed, the

terms "MarkerHashMap," "Google Maps Marker," "NSURLCache," "MapKit

Annotation," "ListingPreviewDictionary," "Core Data," "MapCardPagerAdapter," and

"mMappableItemToMarker" never appear in Corus's infringement contentions.  (*See*

*generally id*.)  Further, the contentions do not identify any specific software components

and do not include any description of Dr. Martin's additional "database" theories.  (*See*

*generally id.*)  Instead, Corus's contentions generally allege that the accused products

store property information, such as location, market price, and market status, on an

unidentified database.  (*See* PIC, Ex. 1 at 7-8 (limitation 1c); *see also id.*, Ex. 1 at 29

(limitation 14c), 47-48 (limitation 30b).)

Corus argues that Dr. Martin's use of the word "additional" in connection with the

five database theories he identifies in his report does not indicate that he is identifying

new theories of infringement.  (Resp. at 6.)  The court disagrees.  As noted above, specifically with respect to Zillow, Dr. Martin states:  "Although this 'required' database satisfies the 'stored in a database on the mobile computing device' limitation, I identified *additional* databases that also satisfy the limitation."  (*See* Stark Decl. ¶ 8, Ex. 6 ¶ 54 (italics added); *see also id.* ¶ 9, Ex. 7 ¶ 54; *id.* ¶ 10, Ex. 8 ¶ 54; *id.* ¶ 11, Ex. 9 ¶ 46; *id.* ¶ 12, Ex. 10 ¶ 45; *id.* ¶ 13, Ex. 11 ¶ 36.)  The term "additional"—as used by Dr. Martin— connotes something new that was not included before.

Corus also argues that the databases and source code sections identified in Dr. Martin's report are not new infringement theories, but rather "additional items of proof for the previously identified theory."  (Resp. at 5-7.)  This argument does not survive scrutiny. Local Patent Rule 120(c) requires contentions to identify "specifically where each element of each Asserted Claim is found," and mere implication is insufficient to meet this requirement.  *See, e.g.*, *Thought, Inc.*, 2016 WL 32230696, at *6-8 (striking expert report that relied on implicitly, not expressly, disclosed theories, and stating:  "[T]his Court's infringement contention disclosure requirements avoid implicit infringement theories by requiring express ones."); *KlausTech, Inc.*, 2018 WL 5109383, at *4 ("Implicit disclosures are contrary to the purpose of the local patent rules, which require parties to disclose the basis for their contentions in order to make them *explicit* and streamline patent litigation.") (quotation marks and citations omitted).

Further, the cases upon which Corus relies are distinguishable on this point.  In *Oracle*, the plaintiff's contentions named the "specific functions" accused of infringement. *See Oracle Am., Inc. v. Google, Inc.*, No. C 10-03561 WHA, 2011 WL 4479305, at *3

(N.D. Cal. Sept. 26, 2011) ("The [accused] function dvmDexSetResolvedMethod . . . was identified at least twice in the relevant portion of Oracle's infringement contentions."). Here, Corus's contentions do not identify the data structure that Dr. Martin relies on for his alternative theories. (*See generally* PIC.) Indeed, the *Oracle* court excluded the expert from testifying that a "TreeMap" structure satisfied the claim when the contentions did not reference a "TreeMap" structure. *See id.* at *4-5. Like in *Oracle*, Corus's contentions do not identify any of the five alternative data structures (per product) that Dr. Martin describes in his report. Indeed, Corus concedes that its contentions do not identify these structures, but merely disclose that property information, such as location, price, and status, "would be stored in a database." (Resp. at 5-6.)

2. Citations to and Reliance upon Source Code

Corus did not refer to any source code in its infringement contentions. (*See generally* PIC.) Corus conducted some review of the source code prior to serving its infringement contentions and reviewed Zillow's source code many times through the course of discovery. *See supra* § II.B. Dr. Martin's report contains myriad citations to source code that allegedly support the additional database theories of infringement and others. *See supra* § II.D. Yet, Corus never sought to amend its contentions to add its code-based allegations. (*See generally* Dkt.) Despite Corus's protestations to the contrary (*see* Resp. at 7-8), Corus was required to amend its contentions to include pinpoint citations to the source code upon which it relied, *see REC Software*, 2012 WL 3545056, at *3 (noting that the plaintiff is under an obligation to "promptly and appropriately" amend its infringement contentions with pinpoint code citations). Further, Zillow notified Corus

on December 28, 2018, when Zillow served its noninfringement and invalidity

contentions, that Corus's infringement contentions lacked citations to source code.  (PNIC

at 2.)  Thus, once Corus identified the source code, it was obligated to amend its

contentions to include those pinpoint citations.  *See Finjan, Inc. v. Blue Coat Sys., Inc*.,

No. 13-CV-03999-BLF, 2015 WL 3640694, at *5 (N.D. Cal. June 11, 2015) (stating that

"[h]ad [the d]efendant communicated to [the p]laintiff its belief that [the p]laintiff's

doctrine of equivalents disclosures were so deficient as to be no disclosure at all,

[thep]laintiff would be on notice of the deficiency and would fail to supplement at its own

risk.").

3.  <u>Doctrine of Equivalents</u>

As noted above, Local Patent Rule 120(e) requires a plaintiff's infringement

contentions to state "[w]hether each element of each asserted claim is claimed to be

literally present and/or present under the doctrine of equivalents in the Accused Device."

Local Patent Rule 120(e).  Corus's infringement contentions do not contain any claims

under the doctrine of equivalents.  (*See generally* PIC.)  Yet, Dr. Martin's report includes

opinions that the accused Trulia products infringe under the doctrine of equivalents.  (*See*

Stark Decl. ¶ 11, Ex. 9 ¶¶ 69-73; *id.* ¶ 10, Ex. 8 ¶¶ 86-90.)  Corus's only response is to

state—without record citation—that "its contentions properly reserved the right to identify

doctrine of equivalents infringement should a jury find that the accused element does not

literally infringe."  (Resp. at 8-9.)  This type of "boilerplate reservation," however, even

assuming Corus asserted it in its contentions, is inadequate under the Local Patent Rules.

*See Finjan*, 2015 WL 3640694, at *5 (stating "that a plaintiff asserting the doctrine of

equivalents must provide a 'limitation-by-limitation analysis, not a boilerplate

reservation'") (quoting *Rambus Inc. v. Hynix Semiconductor Inc., No*. C-0500334 RMW,

2008 WL 5411564, at *3 (N.D. Cal. Dec. 29, 2008)); *see also* Local Patent Rules 120(e).

Further, the authority Corus cites supports Zillow's position.  Specifically, the

*Finjan* court noted that the doctrine of equivalents "is not designed to give a patentee a

second shot at proving infringement '[t]o the extent that any limitation is found to be not

literally present.'"  2015 WL 3640694, at 5 (quoting *Rambus*, 2008 WL 5411564, at *3).

Further, the court "decline[d] to go so far as to say that [the defendant] should have filed a

motion to compel amendment to [the plaintiff's] inadequate disclosures," but still required

"*some notice* of the deficiencies."  *Id.*  Because—unlike here—the defendant in *Finjan*

failed to provide any notice to the plaintiff prior to filing its motion to strike, and

because—unlike here—the plaintiff's notice of the doctrine of equivalents was not absent

but only deficient, the *Finjan* court declined to strike the plaintiff's doctrine of equivalents

theories.  *Id.* at *5-6.  Nevertheless, the court noted that "[h]ad [the defendant]

communicated to [the plaintiff] its belief that [the plaintiff's] doctrine of equivalents

disclosures were so deficient as to be no disclosure at all, [the plaintiff] would be on

notice of the deficiency and would fail to supplement at its own risk." *Id.* at *5.  Here, as

noted above, Zillow specifically told Corus that Corus's infringement contentions did not

disclose any doctrine of equivalents theories.  (*See* PNIC at 4.)

**B.    Good Cause**

Corus argues that, even if Dr. Martin's expert report disclosed new theories of

infringement not included in Corus's contentions, the court should not strike portions of

Dr. Martin's report if Corus demonstrates good cause to amend its contentions, which involves both diligence on the part of the moving party and a lack of prejudice to the non-moving party. (*See* Resp. at 9-15); *see also REC Software*, 2012 WL 3545056, at *6 ("If the theory contained in the expert report does advance a new or revised theory, the court will then determine if good cause exists to amend.") (citing *Acer, Inc. v. Tech. Props. Ltd*., Nos. 5:08-cv-00877 JF/HRL, 5:08-cv-00882 JF/HRL, 5:08-cv-05398 JF/HRL, 2010 WL 3618687, *3 (N.D. Cal. Sept. 10, 2010) (stating that the "good cause . . . inquiry . . . considers first whether the moving party was diligent in amending its contentions and then whether the non-moving party would suffer prejudice if the motion to amend were granted")).

First, Corus argues that the court should not strike portions of Dr. Martin's expert report because Corus was diligent in reviewing Zillow's source code despite (1) difficulties in obtaining the code in a usable format, (2) disputes concerning missing code and source code printouts, and (3) difficulties scheduling depositions and obtaining necessary information from Zillow's technical deponents. (*See* Resp. at 2-5, 9-10.) Corus, however, misses the point. None of these difficulties in reviewing Zillow's code, even if credited to Corus, excuse Corus's failure to ever seek amendment of its infringement contentions—either while Dr. Martin was preparing his report or after Corus served it. By including additional theories and source code citations in Dr. Martin's expert report, Corus, in effect, attempted to amend its prior disclosures without formally asking to do so. This was not an effort in diligence but rather in subversion of the Local Patent Rules. If Corus had moved to amend its contentions—even at the time that it

served Dr. Martin's report—the court may have been able to amend the discovery schedule in a manner that would have had the least impact on the parties, the progress of this litigation, and the court's calendar. By failing to timely move for amendment of its contentions, Corus robbed the court of any opportunity to timely adjust the discovery schedule in this way. Thus, the court concludes that Corus fails to demonstrate diligence in seeking to amend its infringement contentions. *See, e.g., Hemopet v. Hill's Pet Nutrition, Inc.*, No. SACV121908JLSJPRX, 2014 WL 12603093, at *3 (C.D. Cal. Sept. 3, 2014) (concluding similarly that the plaintiff's attempt "to add infringement contentions, without permission or any explanation, by means of [an] expert report" fails to demonstrate diligence in seeking to amend infringement contentions).

Further, to the extent that Corus fails to demonstrate diligence, the court need not consider whether Corus's untimely disclosure prejudiced Zillow. *See id.* at *3 n.3 (stating, in the context of a motion to strike portions of an expert's report for failure to assert the doctrine of equivalents and additional claims in its infringement contentions, that "the 'good cause' analysis ends with a determination that [the plaintiff] was not diligent"); *Takeda Pharm. Co.*, 2015 WL 1227817, at *6 ("Because . . . the record reflects that [the defendant] was not diligent in seeking to include the missing theories in its invalidity contentions, the Court agrees that [the plaintiff] need not show prejudice.").

Nevertheless, Zillow demonstrates that it is prejudiced here. One of the purposes of the Local Patent Rules is to "require early crystallization of infringement theories." *See KlausTech, Inc.*, 2018 WL 5109383, at *6. Here, the parties exchanged expert witness reports on August 30, 2019. (*See* 2d Am. Sched. Order at 2.) Thus, Corus withheld the

full scope of its infringement theories throughout most of the discovery period. Indeed, although discovery did not close until October 11, 2019 (*see id.*), Corus deprived Zillow of any realistic ability to conduct discovery on Corus's new theories. Zillow needed time to analyze Dr. Martin's report and the new theories of infringement and myriad source code citations contained in it. Zillow also needed time to formulate the discovery it needed on these new theories and then to serve written discovery requests. To compel responses to those requests, Zillow would have needed to serve those requests on Corus at least 30 days prior to the discovery cutoff. *See* Fed. R. Civ. P. 33(b)(2) (permitting the responding party 30 days to serve its answers and objections to interrogatories); Fed. R. Civ. P. 34(b)(2)(A) (permitting the responding party 30 days to respond in writing to requests for production); Fed. R. Civ. P. 36(a)(3) (permitting the responding party 30 days to answer or object). Thus, Zillow would have had to serve written discovery on Corus by September 11, 2019—a mere 12 days after Zillow received Dr. Martin's report. And this does not even account for any further discovery via depositions or third-party discovery that Zillow may have needed as result of the late disclosures in Dr. Martin's report—all of which Zillow would have also needed to serve, schedule, and complete before October 11, 2019.

Indeed, by the time Corus fully disclosed its infringement theories, the parties were appropriately engaged in expert discovery and the formulation of any rebuttal expert reports, which were due on September 27, 2019. (*See* 2d Am. Sched. Order at 2.) But Zillow's experts were deprived of knowing the full extent of Corus's theories at the time they wrote their initial reports and, as a practical matter, were deprived of any discovery

concerning those new theories in drafting their rebuttal expert reports. If the court allows Corus to engage in this type of litigation practice by withholding its infringement theories until the last possible moment in the discovery period, the court will simply encourage parties to engage in more delay. Ultimately, this behavior contravenes the spirit of the Local Patent Rules, which are designed to provide for the early elucidation of infringement theories, and the court will not encourage it. *See KlausTech, Inc.*, 2018 WL 5109383, at *8 (finding prejudice was inherent in infringement theories disclosed in an expert report even though expert discovery remained open).

Further, Corus's late disclosures in Dr. Martin's August 30, 2019, expert report came nearly two months after the court issued its July 2, 2019, claim construction order. (*See* CC Order.) Zillow contends that because Corus did not identify any of the accused data structures prior to and during claim construction, Zillow was unable to properly evaluate the parties' dispute regarding the "database" term or to conduct discovery on that issue. (MTE at 14-16; Reply at 6.) Corus responds that accusations against an accused product are irrelevant to claim construction (Resp. at 13), but the court is not convinced that this general rule dispels any prejudice to Zillow. Knowledge of the accused product can provide "meaningful context" for claim construction and is needed to identify disputes. *See Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.*, 442 F.3d 1322, 1326 (Fed. Cir. 2006) ("While a trial court should certainly not prejudge the ultimate infringement analysis by construing claims with an aim to include or exclude an accused product or process, knowledge of that product or process provides meaningful context for the first step of the infringement analysis, claim construction."); *see also In re ICON*

*Health & Fitness, Inc.*, 496 F.3d 1374, 1379 (Fed. Cir. 2007) ("[A]n infringement or invalidity analysis provides the context for claim construction."); *Pall Corp. v. Hemasure Inc.*, 181 F.3d 1305, 1308 (Fed.Cir.1999) ("Although the construction of the claim is independent of the device charged with infringement, it is convenient for the court to concentrate on those aspects of the claim whose relation to the accused device is in dispute."). Thus, the court concludes that Zillow has demonstrated prejudice as a result of Corus's late disclosure of additional infringement theories in Dr. Martin's expert report.

## IV.    CONCLUSION

Based on the foregoing analysis, the court GRANTS Zillow's motion to exclude testimony or opinions pertaining to theories of patent infringement that were introduced for the first time in the opening expert report of Dr. Martin (Dkt. # 58).

Dated this 29th day of January, 2020.

JAMES L. ROBART
United States District Judge