HONORABLE JAMES L. ROBART

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CORUS REALTY HOLDINGS, INC., <br><br> Plaintiff, <br><br> v. <br><br> ZILLOW GROUP, INC.; ZILLOW, INC.; and TRULIA, LLC, <br><br> Defendants. | Case No. 2:18−cv−00847−JLR <br><br> **CORUS REALTY HOLDINGS, INC.'S OPPOSITION TO DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS** <br><br> NOTE ON MOTION CALENDAR: May 12, 2020 <br><br> ORAL ARGUMENT REQUESTED |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................... - 1

II. BACKGROUND ..................................................................................................... - 1

    A. Corus and the '803 Patent. ........................................................................... - 1

    B. Discovery and Claim Construction. ............................................................. - 2

    C. Post-Claim Construction Discovery. ............................................................ - 3

    D. Partial Exclusion of Dr. Martin's Report and Summary Judgment. ............ - 4

III. ARGUMENT ........................................................................................................... - 5

    A. Corus's Initial Assertion of Infringement Was Reasonable, Particularly in view of its Efforts to Discuss its Allegations of Infringement and its Voluntary Efforts to Seek Reexamination. ................ - 5

    B. Corus's Claim Construction Positions Were Reasonable. ........................... - 6

    C. Corus's Post-Construction Infringement Positions Were Reasonable. ........ - 8

    D. Defendants' Incorrect Claims of Improper Expert Use or Inconsistency Do not Establish Any Exceptional Case Here. ....................... - 9

    E. Neither Defendants' Cases Nor the Totality of Circumstances Support Attorneys' Fee Award Here. ........................................................... - 10

    F. Attorneys' Fees Are Not Warranted Against Corus's Attorneys. .............. - 11

    G. Defendants Have Failed to Apportion Any Claimed Fees. ........................ - 12

IV. CONCLUSION ...................................................................................................... - 12

CORUS'S OPPOSITION TO DEFENDANTS' MOTION FOR
ATTORNEYS' FEES AND COSTS
Case No. 2:18-cv-00847-JLR

KILPATRICK TOWNSEND & STOCKTON LLP
1420 Fifth Avenue, Suite 3700 Seattle, WA 98101
206-467-9600

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AdjustaCam, LLC v. Newegg, Inc.*,
    861 F.3d 1353 (Fed. Cir. 2017) ............................................................................... 10, 11

*Comp. Docking Station Corp. v. Dell, Inc.*,
    519 F.3d 1366 (Fed. Cir. 2008) ....................................................................................... 5

*Gaymar Indus., Inc. v. Cincinnati Sub-Zero Prods., Inc.*,
    790 F.3d 1369 (Fed. Cir. 2015) ....................................................................................... 9

*Goodyear Tire & Rubber Co. v. Haeger*,
    137 S.Ct. 1178 (2017) ................................................................................................... 12

*Honeywell Int'l Inc. v. Fujifilm Corp.*,
    708 F. App'x 682 (Fed. Cir. 2018) .................................................................................. 5

*In re Protegrity Corp.*,
    No. 3:15-MD-02600-JD, 2017 WL 747329 (N.D. Cal. Feb. 27, 2017) ..................... 5, 10

*IPS Grp., Inc. v. Duncan Sols., Inc.*,
    No. 15-CV-1526-CAB (MDD), 2018 WL 2215418 (S.D. Cal. May 14, 2018) ....... 11, 12

*Medtronic Navigation, Inc. v. BrainLAB Medizinische Computersysteme GmbH*,
    603 F.3d 943 (Fed. Cir. 2010) ......................................................................................... 9

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
    572 U.S. 545, 134 S. Ct. 1749 (2014) ............................................................................. 5

*SFA Sys., LLC v. Newegg Inc.*,
    793 F.3d 1344 (Fed. Cir. 2015) ....................................................................................... 5

*Taurus IP, LLC v. DaimlerChrysler Corp.*,
    726 F.3d 1306 (Fed. Cir. 2013) ................................................................................. 6, 11

*Transcend Med., Inc. v. Glaukos Corp.*,
    No. 13-cv-830, 2015 WL 5546988 (D. Del. Sept. 18, 2015) ........................................ 10

*Univ. of Utah v. Max-Planck-Gesellschaft zur Foerderung der Wissenschaften e.V.*,
    851 F.3d 1317 (Fed. Cir. 2017) ..................................................................................... 11

*VHT, Inc. v. Zillow Grp., Inc*,
    No. C15-1096JLR, 2016 WL 7077235 (W.D. Wash. Sept. 8, 2016) ............................ 12

**Rules**

28 U.S.C. § 1927 ..................................................................................................................... 11

CORUS'S OPPOSITION TO DEFENDANTS' MOTION FOR
ATTORNEYS' FEES AND COSTS
Case No. 2:18-cv-00847-JLR

KILPATRICK TOWNSEND & STOCKTON LLP
1420 Fifth Avenue, Suite 3700 Seattle, WA 98101
206-467-9600

## I. INTRODUCTION

Corus has asserted the '803 Patent against Defendants in a reasonable manner and resorted to litigation only recently and as a last resort. Although Corus lost, this is not the rare case that mandates an award of attorneys' fees. Unlike the cases Defendants cite, Corus based its claim construction on evidence and examples directly from the specification. Indeed, Defendants initially agreed to the definition of "database." And, this Court rejected the same disclaimer argument Defendants make now regarding real time access to a remote server. Defendants' witnesses agreed that a "database" could be stored in working memory, and that property information downloaded from remote servers would be stored to be both searchable and retrievable. Corus's reliance on the '803 Patent's disclosure, testimony from Defendants' witnesses, and this Court's claim construction order was not exceptional.

## II. BACKGROUND

### A. Corus and the '803 Patent.

This is not a case in which Corus simply bought an unknown patent and sued Zillow and a host of others. Rather, Corus was formed (and is still partially owned) by four professionals who sought to bring a new technological method of selling real estate to the market. Declaration of Charles Pannell ("Pannell Decl."), Ex. A, 15:6-16:22. In 2001, Corus invented the Mobile Navigator that downloaded property information from remote, multiple-listing services online to a device that plotted icons on a digital map that were linked to the property information. *Id.* at 18-29. Corus then filed a patent application that described multiple design variations for the device. *See* Dkt. No. 51 at 2-6. After the patent issued, Corus continued to grow and use the technology, but with the downturn in real estate, the death of its primary investor, and the 2008 financial crisis, Corus merged its real estate operations. Pannell Decl. Ex. A at 40:23-42:13, 79:7-82:8.

Corus retained the '803 Patent, and presented detailed infringement charts to Defendants in 2013 that showed how Zillow stored property information in a local database that could be accessed even when disconnected from the Internet. Dkt. Nos. 79-2 at 13:14-21, 79-2 at 33. At that meeting, Zillow denied liability, claiming that the Florance patent was invalidating. Dkt. No. 102-3 at 13:14-14:7. To resolve any concerns, Corus requested patent reexamination at its own

CORUS'S OPPOSITION TO DEFENDANTS' MOTION FOR
ATTORNEYS' FEES AND COSTS                                    - 1 -
Case No. 2:18-cv-00847-JLR

KILPATRICK TOWNSEND & STOCKTON LLP
1420 Fifth Avenue, Suite 3700 Seattle, WA 98101
206-467-9600

expense. In 2015, the Patent Office allowed the reexamined patent with amendments that included a requirement in claims 1 and 30 that property information obtained from the local database also originate from a "remote source." In 2016, Defendants rejected, and even refused to read, Corus's attempt to discuss the patent. Dkt. No. 103, Ex. C at 70:18-78:16 & Exs. 20-22.

### B.   Discovery and Claim Construction.

Believing Zillow infringed and facing no other option to recover, Corus filed suit. On December 7, 2018, Corus served almost 300 pages of infringement contentions. Although it did not have time to complete a source code review (Dkt. No. 79 at 2-5; Dkt. No. 114, at 3-6), Corus identified the functionalities that infringed, including the fact that the applications downloaded property information from Defendants' remote servers and stored that information in a local database that was "use[d] by the application as the user browses to different properties." Pannell Decl. ¶1. For claim 14, Corus identified the storage unit in the mobile devices that stored the relevant information and for claim 30 Corus explained how the accused applications obtained property information remotely and stored it in "the database of information on the user's device." *Id*. Corus thereafter sought access to Defendants' source code and applicable testimony concerning the accused functionality. *See* Dkt. Nos. 79 at 2-5 & 114 at 3-6 (detailing Corus's efforts). That effort involved 15 days of expert time and over $200,000 on expert review and analysis. Declaration of David Martin ("Martin Decl."), ¶¶3-4.

During claim construction, the parties reached agreement that the term "database" meant "a collection of data arranged for search and retrieval" (Dkt. No. 35 at 5), and then briefed six other disputed terms, as to which Corus prevailed on all but one.

There were two disputes concerning "database" that are relevant to this motion. The first dispute concerned the "storage unit" term in claim 14. The Court rejected most of Defendants' arguments, but accepted their point that a database was involved. The Court construed storage unit as a "device capable of storing property information in a database …" in order to conform to "the storage unit's capabilities …, discard[] useless verbiage, and take[] into account Corus's clear and unambiguous statements in prosecution." Dkt. No. 51 at 28 & 34-36. Those prosecution remarks focused not just on database storage, but also on the notion that to access the property

CORUS'S OPPOSITION TO DEFENDANTS' MOTION FOR
ATTORNEYS' FEES AND COSTS                                  - 2 -
Case No. 2:18-cv-00847-JLR

KILPATRICK TOWNSEND & STOCKTON LLP
1420 Fifth Avenue, Suite 3700 Seattle, WA 98101
206-467-9600

information, Weise users "would have to go through ISP 44, Internet 32 and Server 30 to access value database 54." *Id*. at 34. It was reasonable for Corus to urge that the prosecution history as a whole did not require rewriting "storage unit" to require a database *per se*, so long as the storage unit contained memory capable of storing real estate information locally. The storage unit recited in claim 14 was plainly local to the device and one would not have to traverse the internet to access it, unlike Weise. Thus, while the Court rejected Corus's positon, there is nothing in the prosecution remarks or Court's discussion to suggest Corus's position was unreasonable.

The second issue concerned "whether property information can be obtained from a remote data source in light of Corus's purported disclaimer." Dkt. No. 51 at 41. Here, the Court sided with Corus, holding that "the prosecution history can be reasonably interpreted to not clearly disavow access to a remote data source." *Id*. at 42. Some of the Court's extensive reasoning on this point included that: "[t]he Patent provides significant support for the Invention accessing property information from a remote data source, so long as that information is stored on a local database before it is ultimately integrated on the digital map" (*id*.); the plain language of the claims and specification "support that property information can be obtained from a remote data source *and* a database stored on a" phone (*id*. at 43); "the claim describes a method of 'obtaining *current* status property information,' implying that the property information is being updated, perhaps from a data source outside of the mobile device" (*id*.); "reading the claim phrase to mean that property information can be first obtained from a remote data source and then stored on a local database for later retrieval by the processor does not contradict the representations made in prosecution" (*id*. at 47) and Defendants' proposed disclaimer would "exclude[] the entire embodiment of the Invention that utilizes the remote data source." *Id.* at 47.

### C. Post-Claim Construction Discovery.

After the Court issued its claim construction order overwhelmingly in favor of Corus, the parties finished discovery.  Defendants designated three employees as 30(b)(6) witnesses to discuss the products, and Corus's counsel asked each about how property information was downloaded and stored locally.  Defendants' witnesses agreed that the property information stored on the device was arranged for search and retrieval.  Dkt. No. 103, Ex. D at 209:23-

CORUS'S OPPOSITION TO DEFENDANTS' MOTION FOR
ATTORNEYS' FEES AND COSTS                                 - 3 -
Case No. 2:18-cv-00847-JLR

KILPATRICK TOWNSEND & STOCKTON LLP
1420 Fifth Avenue, Suite 3700 Seattle, WA 98101
206-467-9600

210:2; Ex. E at 78:10-17, 79:20-80:6; Ex. F at 124:3-126:14, 214:2-6, 239:2-19. In other words, Defendants' agreed that local property information storage met the definition of a "database."

Faced with adverse claim constructions that rejected their disclaimer argument and unhelpful testimony that admitted Defendants stored property information in a database, Defendants asserted a new theory that redefined what "search" meant. Defendants asserted that the locally-stored property information could not be "searchable" because when a user searched for characteristics like price or location the software would search the remote server for that criteria and update the storage with matching property information. Dkt. No. 68 at 16. Defendants' "search" argument, however, was not the only form of database search identified by the '803 Patent. Corus relied on the clear description in the patent of two distinct forms of "search" to assert that Defendants' new position was incorrect. Dkt. No. 102 at 13-14.

**D.   Partial Exclusion of Dr. Martin's Report and Summary Judgment.**

In late 2019, Defendants sought to exclude portions of Dr. Martin's infringement report relating to named databases. *See* Dkt. No. 58. Neither Defendants nor this Court excluded all of Dr. Martin's opinions on "database." Even after the order, Dr. Martin could still opine about how he observed collections of remote property information being downloaded and how that information could not support the functionality he observed without a local database structure. *See, e.g.*, Dkt. No. 60, Ex. 6, ¶¶ 44-53; *see also* Dkt. No. 60, Ex. 7-11 § I.C.2.iii.b.1. Thus, while the Court granted Defendants' motion, *see* Dkt. No. 114, additional admissible evidence supported its database contentions. Pannell Decl., Ex. B at 5:23-12:19, 34:5-35:15. Specifically, the testimony of Defendants' witnesses, and Dr. Martin's analysis of it, was not stricken and confirmed the data was stored locally in a way that could be searched and retrieved. *See*, e.g. Dkt. No. 60, Ex. 6 ¶¶ 58-60; *see also* Dkt. No. 60, Ex. 7-11 § I.C.2.iii.b.2.

Concurrently, the Court considered Defendants' new "search" theory on summary judgment. *See* Dkt. No. 68 at 15-18. The Court held that the relevant facts were undisputed and that, on clicking "a property icon, the relevant photos and information are retrieved from memory," but that "a user cannot obtain *additional* property information without connecting back through the Internet to the remote data base." Dkt. No. 138 at 20 (emphasis added). The

CORUS'S OPPOSITION TO DEFENDANTS' MOTION FOR
ATTORNEYS' FEES AND COSTS                                    - 4 -
Case No. 2:18-cv-00847-JLR

KILPATRICK TOWNSEND & STOCKTON LLP
1420 Fifth Avenue, Suite 3700 Seattle, WA 98101
206-467-9600

Court then noted it was "solely responsible for construing patent claims," revisited the prosecution history and revised its construction of "database," holding that "'retrieval' of property information from working memory, where the application is not designed to obtain any new information except through internet access to a remote database does not mean that the working memory is a 'database.'" *Id.* at 21.

## III. ARGUMENT

It is a bedrock principle of American litigation that "each litigant pa[ys] his own attorney's fees, win or lose." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 548, 134 S. Ct. 1749, 1753 (2014) (citation omitted). Patent law departs from that rule only for "exceptional" cases that "stand[] out from others with respect to the substantive strength of a party's litigating position … or the unreasonable manner in which the case was litigated." *Id.* at 554, 134 S. Ct. at 1756. Exceptional cases are "rare." *Id.* at 553-54, 555, 134 S.Ct. at 1756-57; *accord In re Protegrity Corp.*, No. 3:15-MD-02600-JD, 2017 WL 747329, at *2 (N.D. Cal. Feb. 27, 2017). Exceptionality must be based on the strength of a parties position, and "not the correctness or eventual success of that position." *SFA Sys., LLC v. Newegg Inc.*, 793 F.3d 1344, 1348 (Fed. Cir. 2015); *see also Honeywell Int'l Inc. v. Fujifilm Corp.*, 708 F. App'x 682, 684 (Fed. Cir. 2018).

### A. Corus's Initial Assertion of Infringement Was Reasonable, Particularly in view of its Efforts to Discuss its Allegations of Infringement and its Voluntary Efforts to Seek Reexamination.

Corus's infringement claims were reasonable and consistent throughout its dispute with Defendants. In 2013, Corus's attorney developed claim charts and presented its views on the patent and how Defendants infringed. Dkt. Nos. 79-2, p.4 at 13:14-21, 79-2 at 33. Defendants' response was to assert that the patent was invalid. At its own expense, Corus submitted its patent for reexamination to avoid any improper assertions, and then reached back out to Defendants after reexamination. Litigation was a last resort. These are not the actions of a party knowingly asserting frivolous or unreasonable infringement claims. *See Comp. Docking Station Corp. v. Dell, Inc.*, 519 F.3d 1366, 1379 (Fed. Cir. 2008) (recognizing "pre-filing investigation and discussions with the defendant" as relevant factors).

The first time Defendants raised any specific arguments concerning noninfringement to Corus was the November 30, 2018 letter identified in Defendants' motion. *See* Dkt. 146-1. The witnesses who attended meetings prior to litigation did not recall any exchange concerning noninfringement and instead noted that the principal issue Defendants' raised was invalidity. Pannell Decl. Ex. C at 28:18-29:13; Dkt. No. 102-3 at 14:3-15:23. Likewise, the principal thrust of that letter was Defendants' invalidity arguments, which consumed the first two pages. Dkt. 146-1 at 1-2. Defendants now claim exceptionality due to only one of three noninfringement arguments raised for the first time in its letter – that their products use a "remote server" when the claims are limited to "a local database on the device." *Id*. at 2.

But first, at that point, the database argument was inapplicable to claim 14, which did not recite a database at all. Corus relied on that point in formulating its infringement contentions, which appropriately recited how the mobile devices contained a storage unit with property information to meet claim 14, as well as a database to meet claims 1 and 30. *See* Dkt. No. 59-4 at 17, 38, 56.  It is true that this Court's claim construction order later said claim 14's storage unit required a database, but, as noted, that same order rejected the argument that the database could not gain the information accessed from a remote source.  Second, Corus responded to that letter by explaining that substantive law required the disclaimer to be "clear and unmistakable," and noted its interpretation that the claims simply required information from both a remote source and a local database. Dkt. 146-2 at 2. The parties litigated that issue and, as explained herein, Corus reasonably viewed the Court's *Markman* order as agreeing with Corus's point that infringement could occur even if remote data were downloaded to the local database.

**B.     Corus's Claim Construction Positions Were Reasonable**.

A party's claim construction may "stand out" if the "written description provides no support … and instead limits the term" and is thus "divorced from the written description." *Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1327-28 (Fed. Cir. 2013). This is even more true where the court rules adverse to the party. *Id.*  Here, however, this Court found in favor of Corus on the vast majority of the disputed terms at claim construction and ruled partially in Corus's favor on disclaimer scope. *See* Dkt. No. 51. Corus based its definition of "database" on

1  multiple general and technical dictionaries of the time, and Defendants agreed to Corus's
2  construction. *See* Dkt. No. 35 at 5. The Figure 4 example in the patent further confirmed Corus's
3  reading that information could be received from a remote source into working memory and then
4  searched and retrieved. *See* Dkt. No. 51 at 44.

5  Defendants nonetheless hinge the purported unreasonableness of Corus's claim
6  construction on the Court's adoption of Defendants' ***alternative*** construction that claim 14's
7  storage unit required a "database"—a word not used in claim 14.  But the Court's holding does
8  not mean that Corus's position that claim 14's storage unit did not require a database was
9  objectively unreasonable given both the applicable legal standard and that the prosecution
10 arguments focused on the issue of having to remotely connect. At most, the Court's order only
11 held that claim 14 must include a local database. *See* Dkt. No. 51 at 34-36. But, at least as of the
12 *Markman* order, the Court had not held that claim 14 (or any other claim) could not access a
13 remote source.  *Id.* at 42-47. To the contrary, the Court's *Markman* order construing Claims 1
14 and 30 expressly rejected the notion that a remote source could not at all be accessed in
15 conjunction with a local database and instead simply allowed such access as long as property
16 information was "ultimately obtained" from the local database as to claim 1, whereas claim 30
17 already required property information from a remote data source to be stored locally. *Id.* at 41-48.

18 Defendants nonetheless propound a ***newfound*** argument that the construction of
19 "database" did not include "real-time" access to a remote server. Dkt. No. 145 at 11. But
20 Defendants did not squarely assert such a construction during the claim construction process.
21 And, this Court agreed at claim construction that the written description anticipated such real-
22 time access when it noted that "the claim describes a method of 'obtaining ***current*** status
23 property information,' implying that the property information is being updated, perhaps from a
24 data source outside of the mobile device." Dkt. No 51 at 43 (emphasis original). Even more to the
25 point, when the Court's *Markman* Order ultimately addressed whether Corus had disclaimed a
26 remote data source, the Court held that "the prosecution history can be reasonably interpreted to
27 not clearly disavow access to a remote data source." *Id*. at 42. Thus, Corus's positions were
28 grounded in the claim language, specification and other relevant evidence. Even though the Court

CORUS'S OPPOSITION TO DEFENDANTS' MOTION FOR
ATTORNEYS' FEES AND COSTS                - 7 -
Case No. 2:18-cv-00847-JLR

KILPATRICK TOWNSEND & STOCKTON LLP
1420 Fifth Avenue, Suite 3700 Seattle, WA 98101
206-467-9600

later modified its construction at summary judgment, Corus's reliance on the Court's initial finding that "the prosecution history can be reasonably interpreted to not clearly disavow access to a remote data source" was reasonable.

### C. Corus's Post-Construction Infringement Positions Were Reasonable.

After claim construction, Corus questioned Defendants' technical witnesses. They agreed that this collection of information stored on the device memory could be searched and retrieved when icons were selected, as required under the construction. Dkt. Nos. 103, Ex. D at 209:23-210:2; Ex.E at 78:10-17, 79:20-80:6; Ex.F at 124:3-126:14, 214:2-6, 239:2-19. Even setting aside the opinions of its experts, Corus was entitled to reasonably rely on Defendants' ***own testimony*** that the property information was stored in a structure that met the definition of a "database."

Defendants nonetheless contend that everyone knew "its apps cannot work without real-time access to the remote database." Dkt. No. 145 at 8. But this is not true. As explained by both Dr. Martin and by Defendants' own witnesses, the apps were designed to search and retrieve property information ***even if access to the remote data source was severed***. *See, e.g.*, Dkt. No. 60, Ex. 6, ¶57; Dkt. Nos. 102-6 at 201:19–203:12, 102-7 at 208:16-209:11.

In reality, Defendants' position on "database" changed after it lost the disclaimer arguments regarding Wiese and began advocating that, while their software may retrieve information from local memory, it did not "search" local memory. Dkt. No. 68 at 16. Defendants argued that the only "search" performed was when a user input property characteristics like price or location and that simply clicking an icon to display locally-stored property information was not a claimed search. *Id.* Corus's position remained appropriate because the patent detailed two forms of "search"—(i) one in which the "user may input one or more characteristics of a property," and (ii) one which the software "performed automatically in response to displayed icon selections" by a user. Dkt. No. 102-2, Col. 5:44-54; *accord* Dkt. No. 102-11 at 167-171. Not only did the specification describe an "icon" type search, but there was evidence the products automatically searched the collection of property information in local memory upon icon selection. *See, e.g.*, Dkt. No. 60, Ex. 6 ¶¶49, 53, 57, 60. Corus reasonably contended that local "search" and retrieval was performed. Thus, Corus's position on "database" was incorrect only

after the Court modified its construction at summary judgment to require search and retrieval without remote updating. Dkt. No. 138 at 20-21. But loss alone does not show exceptionality.

### D. Defendants' Incorrect Claims of Improper Expert Use or Inconsistency Do not Establish Any Exceptional Case Here.

Corus's experts did not make inconsistent statement nor engage in any exceptional acts. It is neither exceptional nor uncommon for parties in patent infringement to use two different experts for infringement and invalidity. *See Medtronic Navigation, Inc. v. BrainLAB Medizinische Computersysteme GmbH*, 603 F.3d 943, 960-61 (Fed. Cir. 2010) (holding a party's use of two technical experts was not misconduct or misleading). Defendants even used two different technical witnesses, Dr. Bederson and Mr. Williams. Given the complexity and difficulty reviewing the source code, *see* Martin Decl. ¶¶2-4, Dr. Martin had little time to also rebut Defendants' 900 pages of invalidity contentions and 640 pages of expert report.

Context is critical when evaluating expert testimony, *see Gaymar Indus., Inc. v. Cincinnati Sub-Zero Prods., Inc.*, 790 F.3d 1369, 1374-75 (Fed. Cir. 2015), and, here, Dr. Martin and Mr. Sturza formed opinions based on two different sets of evidence and legal standards but their interpretation of "database" did not differ. To assess infringement, Dr. Martin reviewed source code, witness testimony, and the details of the property information received from Defendants' servers and stored on the apps. He then opined that the accused products maintained a collection of information arranged for search and retrieval separate from the remote source. *See, e.g.*, Dkt. No. 60, Ex. 6-11 at § I.C.2.iii.; Pannell Decl. ¶3. Most notably, the system searched the local memory for and retrieved certain property IDs or coordinates that were associated with specific property icons on the map. *See, e.g.*, Dkt. No. 60, Ex. 6, ¶¶68-69 & Ex. 7, ¶69; Dkt. No. 103, Ex. D at 209:23-210:2; Ex. E at 89:12-20; Ex. F at 214:2-6, 239:2-19.

To assess validity, Mr. Sturza reviewed Florance and noted it did not necessarily store information in an arrangement that searches for certain variables. Mr. Sturza applied the same understanding of database that Defendants' attorneys advanced during claim construction, namely, that a structure that simply says go to this memory location—as opposed to search for this ID number—was not a "database." Dkt. 102-13 at 54:15-21; *cf.* 102-20, Ex. 2 at ¶250. Mr.

CORUS'S OPPOSITION TO DEFENDANTS' MOTION FOR
ATTORNEYS' FEES AND COSTS                                    - 9 -
Case No. 2:18-cv-00847-JLR

KILPATRICK TOWNSEND & STOCKTON LLP
1420 Fifth Avenue, Suite 3700 Seattle, WA 98101
206-467-9600

Sturza applied the same database interpretation as Dr. Martin when he testified that data arranged with "identifiers of some sort" that the software searched for "would be data arranged for search and retrieval." Dkt. No. 71-17 at 280:22-281:8; *see also* Dkt. No. 71-18 at 68:22-69:4 (agreeing that iterative visiting elements in memory and looking for something in particular is a "search").

Even assuming, *arguendo*, varying interpretations between Mr. Sturza and Dr. Martin, that does not make the case exceptional. Differences in expert testimony may raise factual conflicts, but do not show objective unreasonableness. *See Transcend Med., Inc. v. Glaukos Corp.*, No. 13-cv-830, 2015 WL 5546988, at *3 n.7 (D. Del. Sept. 18, 2015). Varying construction positions does not make the case exceptional without evidence that the party "misled a judge, misrepresented facts, significantly increased litigation costs without a reasonable basis in law or fact, or did anything else that would rise to a level of egregiousness that might warrant fee shifting." *Protegrity*, 2017 WL 747329, at *6.

Defendants' assertion that Corus's contentions were inadequate does not make this a rare or exceptional case either. "Fights over the adequacy of infringement and invalidity contentions are commonplace in patent litigation and are not inherently indicative of unreasonable conduct." *Id.* Moreover, although this court struck a portion of Corus's expert report on infringement before granting summary judgment, Defendants do not rely on that ruling here. There remained evidence to establish the "database" limitation without those excluded portions, including Dr. Martin's opinions on the required database and the testimony of Defendants' witness.[1]

### E. Neither Defendants' Cases Nor the Totality of Circumstances Support Attorneys' Fee Award Here.

The cases Defendants cite are readily distinguishable from the facts here. In *AdjustaCam, LLC v. Newegg, Inc.*, 861 F.3d 1353, 1360-62 (Fed. Cir. 2017), the Court remanded where the facts not only indicated a weak case, but also that the case was litigated unreasonably. Every reference in the specification and claims required a "single axis" of rotation, yet the plaintiff

---

[1] Defendants ground their motion on the "database" limitation, but then their footnote 4 complains that Corus misrepresented the importance of cellular location to the PTO. That Corus made arguments that were not adopted by the examiner, does not make this case unusual. Virtually every patent applicant advocates its interpretation of a patent and the prior art to the PTO. Likewise, Defendants criticisms of cellular-based location data ignore the fact that making a prototype using cellular-based location data is not required to receive a patent, and that this Court adopted Corus's construction of "cellular-based location data" at *Markman*.

presented no evidence the products used a single axis. *Id.* at 1360-61. The plaintiff litigated in an "unreasonable manner" by serving a new expert report on the day of that expert's deposition, filing a supplemental declaration to support new infringement arguments two years after the lower court's initial determination, and asserting nuisance-value damages against multiple defendants. *Id.* at 1361-62. In *Taurus*, the Court found that there was no support in the patent specification for the plaintiff's claim construction positions on "user," and that lack of support was clear when plaintiff continued to pursue claims after the court's *Markman* order. 726 F.3d at 1327-28. In *IPS Group*, the case was exceptional because the claims required buttons and a cursory review of the product showed the accused device lacked same. *IPS Grp., Inc. v. Duncan Sols., Inc.*, No. 15-cv-1526-CAB (MDD), 2018 WL 2215418, at *2 (S.D. Cal. May 14, 2018).

Here, by contrast, there was significant support in the patent specification and figures to support Corus's claim constructions, which even this Court relied upon. Corus has stood by its experts and their positions throughout discovery and summary judgment and did not serve belated expert reports after the fact. Instead, Corus presented testimony of experts and Defendants' own witnesses to support its infringement theory.

Other relevant factors confirm this case is not "exceptional." Corus has not aggressively sued many defendants seeking nuisance values, suggesting weak claims. Quite the opposite, the damages sought were substantial, as Defendants readily admit and as consistent with Corus' belief in the value of its rights. Defendants say nothing to suggest why Corus's damages claims were objectively unreasonable, and the fact that a party seeks substantial damages does not make this case stand out. *See Univ. of Utah v. Max-Planck-Gesellschaft zur Foerderung der Wissenschaften e.V.*, 851 F.3d 1317, 1322 (Fed. Cir. 2017) (noting court finding that a high damages request "does not differentiate this case from most patent cases"). Finally, Defendants advance no claims of discovery abuse or improper litigation tactics.

### F. Attorneys' Fees Are Not Warranted Against Corus's Attorneys.

Defendants also assert that this Court should make Kilpatrick Townsend liable for attorneys' fees under 28 U.S.C. § 1927. This requirement is "more stringent than the requirements of 35 U.S.C. § 285," and the attorneys' actions must be in "bad faith or

reckless[]." *IPS Grp.*, 2018 WL 2215418, at *3. But Defendants offer no additional evidence or argument to explain how counsel acted in bad faith or were reckless and, for this and the reasons noted above, the request should be denied. Independently, there is substantial evidence that Corus and its attorneys were constantly evaluating the case and did not bring or pursue the claims recklessly or in bad faith. Corus dropped its assertion of claim 19 in light of Defendants' non-infringement and invalidity contentions. Pannell Decl. ¶ 7, Ex. D. Corus's attorneys seriously evaluated and responded to Defendants correspondence on the "database" issue. Dkt. No. 146-2.  And this Court dismissed the same disclaimer arguments at claim construction that Defendants made in those letters and briefs. *See* Dkt. No. 51 at 41-48.

Corus invested heavily in its expert Dr. Martin and Mr. Sturza throughout discovery to evaluate the claim construction positions and analyze source code for weeks. These facts do not reflect recklessness or bad faith. Defendants criticize the use of litigation funding in order to pursue litigation in federal court, but the willingness to expend many thousands of dollars to investigate and substantiate claims only demonstrates good faith, and does not detract from it.[2]

**G.      Defendants Have Failed to Apportion Any Claimed Fees.**

Defendants have made no effort to show any requisite "causal connection" between the alleged misconduct and the fees it claims. *Goodyear Tire & Rubber Co. v. Haeger*, 137 S.Ct. 1178, 1187 (2017); *see IPS Grp.*, 2018 WL 2215418, at *3 (refusing to grant attorneys' fees on separate defense). The Court rejected Defendants claims of indefiniteness, and dismissed without prejudice Defendants' invalidity claims that were grounded on prior art and arguments previously considered by the PTO. Defendants' motion should be denied for this reason as well.

**IV.    CONCLUSION**

Corus respectfully requests that Defendants' motion be denied.

---

[2] Defendants' request for additional discovery against Mr. Gorman and any litigation funder puts the cart before the horse as there has been no determination of exceptional case.  Mr. Gorman is not a party and unlike the case cites by Defendants, he does not even own half of Corus shares (Pannell Decl., Ex. A, 15:20-16:4) and Defendants present no explanation why they could not have investigated their veil piercing theory during discovery.  Defendants speculation regarding Corus's litigation funding is insufficient.  *See VHT, Inc. v. Zillow Grp., Inc*, No. C15-1096JLR, 2016 WL 7077235, at *1 (W.D. Wash. Sept. 8, 2016).

DATED: May 4, 2020

**KILPATRICK TOWNSEND & STOCKTON LLP**

<u>*s/ Dario Machleidt*</u>
Dario Machleidt (State Bar No. 41860)
Kilpatrick Townsend & Stockton LLP
1420 Fifth Avenue, Suite 3700
Seattle, WA 98101
206-467-9600

Mitch Stockwell (*pro hac vice*)
Wab Kadaba (*pro hac vice*)
Charles Pannell (*pro hac vice*)
Josh Lee (*pro hac vice*)
Kilpatrick Townsend & Stockton LLP
1100 Peachtree Street NE, Suite 2800
Atlanta, GA 30309
404-815-6500

Megan M. Chung (*pro hac vice*)
Kilpatrick Townsend & Stockton LLP
12255 El Camino Real, Suite 250
San Diego, CA 92130
858-350-6100

Kasey E. Koballa (*pro hac vice*)
Kilpatrick Townsend & Stockton LLP
607 14th Street, NW Suite 900
Washington, DC 20005
202-508-5800

*Attorneys for Plaintiff Corus Realty Holdings, Inc.*